IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| NORTH AMERICAN DENTAL MANAGEMENT, LLC, | ) ) ) | |
| Plaintiff, | ) ) | Civil Action No. 2:23-cv-1202 |
| v. | ) ) | *ELECTRONICALLY FILED* |
| MICHELE PHILLIPS, | ) ) | |
| Defendant. | ) ) ) | |

## VERIFIED COMPLAINT

Plaintiff North American Dental Management, LLC ("NADM" or the "Company"), by and through its undersigned counsel, files this Verified Complaint against its former Manager of Doctor Recruiting, Michele Phillips ("Phillips" or "Defendant").

## INTRODUCTION

1. Phillips was a highly compensated recruiting executive for NADM. In that role, she had intimate knowledge of NADM's trade secrets related to recruiting and expansions strategies and plans, such as NADM's business plans, recruiting strategies, plans, practice acquisition targets and individual provider targets. She possessed (and upon information and belief is still in possession of) contact information on prospective hires and partners. Using the information, Phillips was able to "build[] valuable relationships with her candidates … to ensure beneficial outcomes."[1]

2. Despite being subject to a noncompete restriction and obligations with respect to NADM's confidential information and trade secrets, Phillips cavalierly advised NADM that she

---

[1] https://www.mrrn.org/about-us/

was resigning to accept a position with a competing dental services organization ("DSO") but refused to tell NADM where she was going or the type of role she would be performing.

3.      Given Phillips' role, the highly sensitive information to which she had access and the valuable relationships NADM paid her to develop, she cannot perform a recruiting role for a competing DSO without inevitably calling upon NADM's trade secrets.  As detailed below, NADM was forced to file this lawsuit to put a halt to Phillips' inevitable misappropriation and breach of her post-employment obligations to NADM and stanch the irreparable harm that has already occurred — and will continue to occur — if Phillips is permitted to continue to illegally use NADM's confidential information and trade secrets for a competing business.

4.       On May 25, 2023, Phillips informed Gabrielle McCarron, Senior Vice President, People, at NADM, that she was leaving NADM to work for a competing DSO.  After Phillips failed to disclose the competing DSO for which she planned to work, NADM accepted Phillips resignation effective June 7, 2023.

5.       Upon information and belief, Phillips is working for a competing DSO armed with NADM's trade secrets in direct violation of her May 10, 2021, offer letter agreement (the "Offer Letter Agreement"), a true and correct copy of which is attached hereto as Exhibit A.

6.      Phillips' inevitable misappropriation fundamentally violates the trust NADM placed in her as Manager of Doctor Recruiting, as well as her contractual, statutory, and common law duties and obligations to NADM.  NADM undertakes substantial measures to ensure that its highly confidential information and trade secrets remain secret and are not misused, including by restricting access to only certain employees who need such information and through numerous other measures.  NADM also requires employees, including Phillips, to acknowledge their

understanding of the confidentiality requirements through company policy such as the Team Member Handbook and individual agreements, such as Phillips' Offer Letter Agreement.

7.    Phillips' employment with a direct DSO competitor and her refusal to respond to multiple cease and desist letters post-departure show premeditated — if not concerted — intent to violate her obligations to NADM. Moreover, now armed with NADM's trade secrets, Phillips, upon information and belief, is actively and directly competing with NADM in direct violation of her Offer Letter Agreement. Phillips will inevitably continue to use NADM's confidential information and trade secrets and its considerable goodwill for the benefit of herself and a DSO competitor, thereby enabling her to unfairly compete with NADM.

8.    NADM has suffered and will continue to suffer irreparable harm absent action from this Court. NADM brings this action to (a) protect its recruiting relationships with dentists, dental practices and dental professionals, its goodwill, valuable confidential, proprietary and/or trade secret information; (b) enforce Phillips's contractual obligations regarding competitive activity; (c) prevent her from using NADM's confidential, proprietary, and/or trade secret information on behalf of a DSO competitor; and (d) prohibit Phillips from unfairly competing with NADM.

## **THE PARTIES**

9.    NADM, an Ohio limited liability company, is headquartered in Pittsburgh, PA. NADM is wholly owned by North American Dental Group, LLC, a Delaware limited liability holding company headquartered in Pittsburgh, Pennsylvania.

10.    Michele Phillips is an adult individual who, upon information and belief, resides at 6573 Pocklington Road, Britton, Michigan 49229. During her employment with NADM, Phillips held high-level strategic positions with NADM, including Manager of Doctor

Recruiting.  In these positions, Phillips had access to NADM's confidential information and trade secrets, which she regularly used in performing her roles for NADM.

## JURISDICTION AND VENUE

11.    This Court has jurisdiction over this civil action under 28 U.S.C. § 1331 because the case arises, in part, under the federal Defend Trade Secrets Act, 18 U.S.C. § 1831 *et seq*., and 28 U.S.C. § 1332 because, upon information and belief, there exists diversity of citizenship between the parties and the value of the claim exceeds $75,000.

12.    This Court has supplemental jurisdiction over the state law claims in this action under 28 U.S.C. § 1367 because such claims are so closely related to the Defend Trade Secrets Act claim that they are part of the same case and controversy.

13.    In the Offer Letter Agreement, Phillips agreed and did "consent[] to exclusive jurisdiction of the federal or state courts of competent jurisdiction within Allegheny County in [sic] Commonwealth of Pennsylvania."   Ex. A, ¶ 8.

14.     In addition, this Court has personal jurisdiction over Phillips because she has the required minimum contacts with this forum to establish personal jurisdiction.  Phillips: (a) executed the Offer Letter Agreement with NADM in which she agreed that the Offer Letter Agreement "shall be governed by and construed in accordance with the laws of the Commonwealth of Pennsylvania." (Ex. A, ¶ 8); (b) reported into NADG's Pennsylvania headquarters; (c) traveled to Pennsylvania in her work for NADM; (d) was paid out of NADG's Pennsylvania headquarters; and (e) has used or will use NADM's Confidential Information and Trade Secrets that were stored on NADG's servers in Pennsylvania.

15.     Based on Phillips' contacts as described herein, it was wholly foreseeable that Phillips would be haled into court in the United States District Court for the Western District of Pennsylvania.

## FACTUAL ALLEGATIONS

A.     NADM's Business

16.     Headquartered in Pittsburgh, PA, NADM is a DSO dedicated to offering best-in-class dental care to every patient at every visit at more than 200 affiliated dental practices. As a leading DSO, the Company specializes in providing non-clinical administrative services to dental practices, supporting clinical decisions by a group of affiliated dentists who collaborate to advance patient care based on a unique data and outcome-driven approach.

17.     In the 15 years since its founding, NADM has expanded its footprint of services to provide administrative support services to dental practices in 15 states. NADM's footprint enables it to provide excellent service and rapid response to its affiliated dental practices throughout the United States.

18.     Through its talented team of human resources, marketing, budgeting, and information technology professionals, NADM is able to provide a full range of non-clinical services to support dentists and dental practices. NADM also recruits doctors and dental professionals for its supported practices as it continues to expand the reach of the services provided by the supported practices across the country. These professionals and practices are empowered to make clinical decisions intent on delivering best-in-class oral care while providing exceptional patient experience. NADM today employs more than 3,000 people, including about 400 team members in non-clinical positions. NADM's commitment to this mission of excellence in dental services has transformed it into a leading dental services organization.

19.     NADM relies on its robust recruiting team to develop and grow business opportunities for the dental practices and dentists to whom it provides services. Until recently, NADM's valuable recruiting force was led by Phillips, its Manager of Doctor Recruiting. In that role, NADM entrusted Phillips with the Company's most important and highly confidential and

proprietary business metrics and plans, including, but not limited to, its information about recruiting strategies, prospective recruiting targets of dentists, dental practices, and dental professionals, geofencing of competitors, competitive strategies, contract terms, and business development and marketing initiatives.  Given her knowledge and experience, Phillips was tasked with managing all matters for NADM's doctor recruiting efforts across the country.

20.     NADM uses customized recruiting solutions to locate, engage, recruit, and onboard highly qualified doctors and dental professionals to its affiliated practices.  This requires NADM to have an intimate knowledge of prospective recruiting targets, market data, and competitor analytics.  As a result, NADM invests significant resources in developing and fostering these potential recruiting targets through a dedicated group of recruiting professionals, such as Phillips.  NADM highly compensates these professionals and provides them with significant administrative support and business-related expense reimbursement for this purpose, which all come at great expense to NADM.

21.     Moreover, because of the importance of these relationships, NADM's recruiting professionals — including Phillips — are privy to vast amounts of confidential information and trade secrets related to NADM's recruiting strategies and potential recruiting targets.  Such information could be easily exploited by a competitor if the competitor were permitted to gain access to such information by hiring a recruiting leader, like Phillips, who could use NADM's confidential information and trade secrets to compete directly with NADM.

B.     **NADM Hires, Trains And Promotes Phillips To Manager of Doctor Recruiting**

22.     On October 29, 2018, NADM hired Phillips as a Dentist Recruiter.  Phillips left for a brief period only to return to NADM a few months later.

23.     On or about May 10, 2021, NADM rehired Phillips as a Brand Ambassador.  In connection with her employment, she received an increase in compensation and additional job

duties and, in exchange, signed the Offer Letter Agreement as well as a Confidentiality/Non-Solicitation Agreement, dated May 13, 2021, a true and correct copy of which is attached hereto as Exhibit B.

24.     In that role, Phillips was responsible for gaining and maintaining a deep knowledge of the dental services industry; developing, maintaining and growing NADM's recruiting relationships across the country; and targeting and recruiting dentists, dental professionals, and dental practices.

25.     On or about October 1, 2022, NADM promoted Phillips to Manager of Doctor Recruiting; she held that position until she resigned from the Company effective June 7, 2023. Phillips' elevation to Manager of Doctor Recruiting carried with it a significant increase in her compensation package, including an annual base salary increase to $125,000 and participation in NADM's lucrative bonus program with eligibility for a target bonus of 10%.  In addition to being highly compensated, Phillips reported directly to NADM's Senior Vice President, People, and indirectly to its Chief Executive Officer.

26.     In connection with her responsibilities as Manager of Doctor Recruiting, Phillips had access to NADM's most valuable recruiting relationships and its confidential and proprietary information and trade secrets (hereinafter collectively referred to as the "Confidential Information and Trade Secrets"), which included but were not limited to:

      i.   Technical information, such as information regarding dental services specifications, performance, integration capabilities, research and development objectives and data, plans, intellectual property, applications and other design, service or performance data;

     ii.   Information about existing or prospective recruiting targets, such as target lists, contact information, transaction data, dental practice financials, professional business methodologies, patient revenue history, pricing, and credit information;

    iii.   <u>Business, financial and strategic information</u>, such as sales and earnings information, profit margins, accounting information, financial information, pricing policies, sales compensation methodologies, margins, investment plans and budgets, forecasts, strategies, plans and prospects;

    iv.   <u>Organizational and operational information</u>, such as personnel and compensation data, information concerning utilization or capabilities/performance of personnel, logistics management techniques, methodologies and systems including CRM and methods of operation, data and facilities plans; and

    v.   <u>Advertising, marketing, sales or strategy information</u>, such as plans, programs techniques, strategies, results and budgets, pricing and volume strategies, and market research, and training and development courses.

*See* Ex. B.

27.     As Manager of Doctor Recruiting, Phillips was intimately familiar with NADM's business and critical to the Company's nationwide recruiting efforts.  Phillips was exposed to virtually all of NADM's recruiting targets for doctors, dental professionals and dental practices across the United States, either through the Company's direct introduction or through her regular access to NADM's recruiting database covering the 15 states in which NADM provides services to dental practices and its efforts to recruit across the United States more broadly.  Moreover, NADM trained Phillips on and exposed her to its business practices and recruiting strategies regarding the dental services and solutions NADM provides to its network of affiliated dental practices.  In sum, NADM provided Phillips with Confidential Information and Trade Secrets as required to perform her job and, in turn, Phillips contributed to the wealth of that Confidential Information and Trade Secret information over time.

**C.   <u>Phillips' Contractual Obligations to NADM</u>**

28.     In connection with Phillips' rehiring as Brand Ambassador, NADM required Phillips to execute the Offer Letter Agreement to protect its Confidential Information and Trade Secrets, valuable relationships, and investment in its recruiting strategies and targets — all of

which Phillips would have access to in her new role.  In exchange for her execution of the Offer

Letter Agreement, Phillips received the position and the increased compensation package

described above.  *See* Ex. A.

29.    In Section 5 of the Offer Letter Agreement, Phillips agreed she would not

compete with NADM for a period of twelve (12) months following her employment with NADM

as follows:

> You acknowledge that (a) you will perform services of a unique
> nature for the Company, and that your performance of such services
> to a competing business will result in irreparable harm to the
> Company (and its subsidiaries or affiliates) . . .  Accordingly, you
> will not, directly or indirectly, (i) for so long as you are employed
> by the Company (or any [sic] its subsidiaries or affiliates) and for a
> period of twelve (12) months thereafter, no matter what the reason
> for such termination or whether such termination is initiated by you
> or the Company, own (beneficially or otherwise), manage, operate,
> control, be employed by, participate in (as a partner, director or
> otherwise), or perform services for (including as a consultant or
> advisor) any person or entity that is engaged in (or provide financial
> assistance to or otherwise be engaged in any manner in the operation
> of) any business that provides management and operational services
> and related functions for dental practices, including specialty dental
> practices . . . .

See Ex. A § 5.

30.    Additionally, Section 5 goes on to prohibit Phillips from soliciting certain

categories of employees and clients, as follows:

> . . . (ii) for so long as you are employed by the Company (or any of
> its subsidiaries or affiliates) and for a period of twelve (12) months
> thereafter, no matter what the reason for such termination or whether
> such termination is initiated by you or the Company, (A) solicit,
> induce or attempt to induce any employee or individual retained as
> an independent contractor of the Company (or any [sic] its
> subsidiaries or affiliates) to terminate his or her employment or
> contracting relationship with such entity, or to become an employee
> or independent contractor of any other person or entity, (B) solicit,
> induce or attempt to induce any customer, payor, supplier or other
> business relation of the Company (or any [sic] its subsidiaries or
> affiliates) to cease doing business with such entity or materially and

> adversely interfere with the relationship between any such customer,
> payor, supplier or other business relation and such entity, or (C)
> solicit, induce or attempt to induce any customer, payor, supplier or
> other business relation of the Company (or any [sic] its subsidiaries
> or affiliates) to conduct with anyone else any business or activity
> that such business relation could conduct with the Company (or any
> [sic] its subsidiaries or affiliates).

*Id.*

31.     Also in the Offer Letter Agreement, Phillips acknowledged and agreed "not to,
during [her] employment or thereafter, disclose to any person or entity or use for [her] own
account or for the account of any person or entity (other than the Company (or its subsidiaries
and affiliates) any confidential information for the company without the prior written consent of
the company, unless and to the extent that such disclosure is required by law." *Id.* § 7.

32.     In the Confidentiality/Non-Solicit Agreement, Phillips agreed that she would have
"extensive access to and become familiar with, and may develop or contribute to, the
Confidential Information" and recognized that "the Confidential Information provides the
Company with a competitive advantage over others in the marketplace and is vital to the success
of the Company." Ex. B at 1.

33.     Phillips further agreed that "the Company would be irreparably injured and the
good will of the Company would be irreparably damaged if [she] neglected to follow the
guidelines outlined within this Agreement" and she also agreed that "the activities discussed in
[the] Agreement are reasonable in scope and duration and do not unreasonably restrict [her]
association with other business entities . . . ." *Id.*

34.     Phillips' executed Offer Letter Agreement and Confidentiality/Non-Solicitation
Agreement are valid and enforceable contracts and the post-employment restrictions on
competition, solicitation, and non-disclosure contained therein are fair, reasonable, and necessary

to protect the legitimate business interests of NADM.  Those business interests are proprietary and establish a competitive advantage in favor of NADM.

**D.** **Phillips Resigns From NADM And Immediately Breaches Her Legal Obligations To The Company**

35.     On or about May 25, 2023, Phillips informed NADM that she was resigning from the Company and that she wanted her resignation to take effect June 9, 2023.

36.      Despite admittedly going to work for a competing DSO, Phillips failed to immediately return her Company-issued laptop computer on her last day, which contained NADM's Confidential Information and Trade Secrets.  In fact, Phillips remained in possession of her laptop for approximately two weeks after her last day. The following are just some examples of the types of documents that Phillips used or had access to leading up to her resignation and that would be maintained on her laptop:

- A proprietary digital recruitment marketing strategy built by NADM, including information such as leveraging recruitment artificial intelligence technologies, geofencing and geotargeting, bulk text messaging, and drip campaigns;

- 2023 People Strategy Presentation;

- 2023 HR strategy and PowerPoint presentation;

- HR People Strategy with information on retention, rewards, elevation, analytics, and acquisitions;

- Practice Hours Expansion Workplan regarding how to execute on hours expansion;

- Illinois Recruiting Strategy;

- Recruitment Strategy Slides; and

- Doctor Recruiting strategy slides.

37.     NADM learned almost simultaneously with Phillips' resignation that she started working for an undisclosed DSO directly competing with NADM.  In other words, armed with NADM's Confidential Information and Trade Secrets, Phillips is now working for a competing

DSO in direct violation of her non-compete promises to NADM. The violations are ongoing and it is inevitable that Phillips will misappropriate NADM's Confidential Information and Trade Secrets (if she hasn't already) if Phillips is permitted to work for a competing DSO.

**E.    Phillips Does Not Respond To NADM's Letters Regarding Phillips' Obligations To NADM**

38.    On May 31, 2023, NADM, through counsel, sent a letter to Phillips demanding that she honor her obligations to NADM, immediately cease and desist her employment with any competing DSO, and immediately identify and return any of NADM's Confidential Information and Trade Secrets in Phillips' possession, including her company-issued laptop. A true and correct copy of NADM's counsel's May 31, 2023 letter to Phillips is attached hereto as Exhibit C. *Phillips never responded to this letter*.

39.    On June 9, 2023, NADM, again through counsel, sent a letter to Phillips making clear that NADM would not accept her silence and reiterating that it intended to enforce Phillips' contractual obligations. A true and correct copy of NADM's counsel's June 9, 2023 letter to Phillips is attached hereto as Exhibit D. *Phillips never responded to this letter.*

40.    Despite these requests, Phillips waited approximately two weeks to return her company-issued laptop and/or still has not confirmed that she is not in possession of NADM's Confidential Information and Trade Secrets.

41.    Phillips has failed to meaningfully respond to any of NADM's above-referenced demands, including providing reassurances to confirm that Phillips did not use, copy or disclose NADM's Confidential Information and Trade Secrets.

**F.    NADM Protects its Confidential Information and Trade Secrets**

42.    NADM protects its investment in its Confidential Information and Trade Secrets.

43.    NADM has taken various other steps to protect its Confidential Information and Trade Secrets, including:  (a) using network firewalls, password protection and security credentials to prevent unauthorized access to its servers; (b) limiting its employees' access to information to that which is necessary to fulfill their job functions; (c) controlling physical access to NADM's offices, facilities and information; (d) requiring employees with access to its trade secrets to sign restrictive covenants, including restrictive covenant agreements; (e) implementing and enforcing policies and procedures to protect its confidential information and trade secrets, and (f) enforcing its employees' obligations with respect to its trade secrets.

44.    In addition, all NADM employees are subject to employee policies, such as NADM's ***Team Member Handbook***, which requires them to maintain and keep confidential NADM's Confidential Information and Trade Secrets.

## G.    NADM Is Entitled To Preliminary And Permanent Injunctive Relief Against Phillips

45.    NADM seeks immediate relief in the form of a temporary restraining order/preliminary injunction against Phillips and asks this Court to (a) require the return of NADM's Confidential Information and Trade Secrets; (b) enjoin Phillips from misusing or disclosing NADM's Confidential Information and Trade Secrets; and (c) enjoin Phillips from working for a competitor for twelve (12) months in accordance with the Offer Letter Agreement.

46.    NADM is likely to succeed on the merits of this case because it has valid and enforceable agreements with Phillips, it has legitimate business interests to protect, and Phillips' breaches of her contractual obligations to NADM are open, blatant, and obvious.

47.    NADM's recruiting relationships, goodwill, market position, business opportunities, competitive advantage, Confidential Information and Trade Secrets, and relations

with its remaining employees will be irreparably harmed if a preliminary and permanent injunction is not entered.

48.     NADM will suffer far greater harm if a preliminary and permanent injunction is not granted than Phillips will suffer if one is granted.  For her part, Phillips will suffer no harm, but simply be ordered to honor the promises she made.

49.     Granting a preliminary injunction would serve the public interest.

### COUNT I
### VIOLATION OF THE DEFEND TRADE SECRETS ACT

50.     NADM incorporates by reference the preceding Paragraphs of the Verified Complaint as if fully set forth herein.

51.     NADM's Confidential Information and Trade Secrets are the backbone of NADM's business, all of which Phillips had access to and knowledge of by virtue of her employment relationships with NADM and a leader in its recruiting efforts.  NADM's Confidential Information and Trade Secrets constitute trade secrets under the Defend Trade Secrets Act.

52.     Disclosure and unauthorized use of this type of information undermines NADM's competitive position in the highly competitive dental services industry.

53.     NADM has taken various steps to protect its trade secrets, including: (a) using network firewalls, password protection and security credentials to prevent unauthorized access to NADM's servers; (b) limiting its employees' access to information to that which is necessary to fulfill their job functions; (c) controlling physical access to NADM's offices, facilities and information; (d) requiring employees with access to its trade secrets to sign restrictive covenants, including nondisclosure, non-solicitation and/or non-competition agreements; (e) implementing and enforcing policies and procedures to protect its Confidential Information and Trade Secrets,

14

such as its Team Member Handbook, and (f) enforcing its employees' obligations with respect to its Confidential Information and Trade Secrets.

54.     Phillips has vast knowledge of NADM's Confidential Information and Trade Secrets.

55.     In addition, upon information and belief, Philips is in possession of NADM's Confidential Information and Trade Secrets, including, without limitation, contact information for NADM's recruiting targets and NADM's recruiting strategies.

56.     Phillips has improperly and without authorization misappropriated, retained, used, disclosed, and/or exploited NADM's Confidential Information and Trade Secrets.  This conduct constitutes an actual misappropriation and misuse of NADM's trade secret information in violation of the Defend Trade Secrets Act.

57.     In addition, given the Confidential Information and Trade Secrets to which Phillips was privy in her employment with NADM, Phillips cannot work for a competitor of NADM without inevitably calling upon or using NADM's Confidential Information and Trade Secrets.

58.     If left unaddressed, Phillips will continue to improperly and without authorization misappropriate, retain, use, disclose, and/or exploit NADM's Confidential Information and Trade Secrets on behalf of the DSO competitor for whom she works.

59.     NADM did not expressly or impliedly consent to Phillips' acquisition or use of its Confidential Information and Trade Secrets.

60.     Upon information and belief, Phillips' misappropriation is willful and malicious.

61.     Upon information and belief, Phillips' misappropriation of NADM's trade secrets is causing and will continue to cause NADM to suffer irreparable harm, for which it has no adequate remedy at law, and has damaged NADM in an amount to be determined at trial.

62.     The threatened and actual injuries that NADM has suffered and will suffer are immediate and irreparable.  Because of the difficulty in quantifying injury and harm to NADM's ability to compete, acquire and maintain a competitive advantage through its Confidential Information and Trade Secrets, monetary damages alone will not adequately compensate NADM for Phillips' wrongful use of such information and breach of her duties to NADM.  NADM, therefore, lacks an adequate and complete remedy at law and an equitable remedy is appropriate in addition to monetary damages.

63.     Under Section 1836 of the Defend Trade Secrets Act, NADM is entitled to injunctive relief, compensatory damages, exemplary damages, an award of reasonable attorneys' fees, and/or other appropriate relief.

**COUNT II**
**VIOLATION OF THE**
**PENNSYLVANIA UNIFORM TRADE SECRETS ACT**

64.      NADM incorporates by reference the preceding Paragraphs of the Verified Complaint as if fully set forth herein.

65.     Phillips is a "person" as defined by the Pennsylvania Uniform Trade Secrets Acts ("PUTSA").

66.     In the course of her employment, NADM afforded Phillips access to and use of its Confidential Information and Trade Secrets, as defined above.

67.     NADM has spent significant time and money developing such Confidential Information and Trade Secrets.

68.     NADM's Confidential Information and Trade Secrets are protected, kept confidential, and are not publicly disclosed.

69.     NADM's Confidential Information and Trade Secrets are valuable and would be harmful to NADM in the hands of its competitors.

70.     By virtue of her employment with NADM, Phillips was obligated to maintain the confidentiality of NADM's Confidential Information and Trade Secrets, as well as not to use them for her personal benefit or the benefit of a DSO competitor.

71.      In addition, given the Confidential Information and Trade Secrets to which Phillips was privy in her employment with NADM, Phillips cannot work for a competitor of NADM without inevitably calling upon or using NADM's Confidential Information and Trade Secrets.

72.     As a direct and proximate result of the actual and/or threatened misappropriation of NADM's Confidential Information and Trade Secrets, NADM has suffered and will continue to suffer substantial damages, including but not limited to the loss of goodwill, revenues, profits, the value of its investment and its competitive advantage among recruiters in the dental services industry.

73.     Phillips' conduct is knowing, willful, intentional, malicious, unprivileged, and in bad faith, and caused – and will continue to cause – immediate and irreparable harm to NADM, as well as causing it to suffer compensatory damages.

74.     NADM is entitled to injunctive relief, double damages and affirmative relief to ensure protection of its trade secrets, an award of reasonable attorneys' fees, exemplary damages and/or other appropriate relief under Sections 5303-5305 of the PUTSA.

## COUNT III
## BREACH OF CONTRACT

75.     NADM incorporates by reference the preceding Paragraphs of the Verified

Complaint as if fully set forth herein.

76.     The Offer Letter Agreement is a valid and enforceable contract that is incidental

to the employment relationship between Phillips and NADM and supported by consideration.

Moreover, the restrictive covenants therein are reasonably necessary to protect NADM's

legitimate interests and are reasonably limited in duration and geographic scope.

77.     Under Phillips' Offer Letter Agreement, Phillips agreed she would not compete

with NADM for a period of twelve (12) months following her employment with NADM as

follows:

> You acknowledge that (a) you will perform services of a unique
> nature for the Company, and that your performance of such services
> to a competing business will result in irreparable harm to the
> Company (and its subsidiaries or affiliates) . . .  Accordingly, you
> will not, directly or indirectly, (i) for so long as you are employed
> by the Company (or any [sic] its subsidiaries or affiliates) and for a
> period of twelve (12) months thereafter, no matter what the reason
> for such termination or whether such termination is initiated by you
> or the Company, own (beneficially or otherwise), manage, operate,
> control, be employed by, participate in (as a partner, director or
> otherwise), or perform services for (including as a consultant or
> advisor) any person or entity that is engaged in (or provide financial
> assistance to or otherwise be engaged in any manner in the operation
> of) any business that provides management and operational services
> and related functions for dental practices, including specialty dental
> practices . . . .

Ex. A § 5.

78.     The Confidentiality/Non-Solicitation Agreement is a valid and enforceable

contract that is incidental to the employment relationship between Phillips and NADM and

supported by consideration.  Moreover, the restrictive covenants therein are reasonably necessary

to protect NADM's legitimate interests.

79.     In the Confidentiality/Non-Solicitation Agreement, Phillips agreed to safeguard the privacy of NADM's Confidential Information and Trade Secrets. *See* Ex. B.

80.     In the Confidentiality/Non-Solicitation Agreement, Phillips further agreed to not "directly or indirectly, disclose, disseminate, reveal, divulge, discuss, copy or otherwise use or cause to be used, any Confidential Information other than in the authorized scope of [her] employment with the Company."  She further agreed that, "[u]pon termination of employment, no matter what the reason for such termination . . . [she] shall return to the Company any and all Confidential Information and all other materials and information in tangible or electronic form concerning the business and affairs of the Company and/or its patients and vendors." Ex. B at 1-2.

81.     Phillips acknowledged and agreed that she had "extensive access to and [would] become familiar with, and may develop or contribute to, the Confidential Information" and that "the Company would be irreparably injured and the good will of the Company would be irreparably damaged if [she] neglected to follow the guidelines outlined" in the agreement.  *Id.*

82.     As set forth herein, upon information and belief, Phillips violated her obligations under the Offer Letter Agreement and/or the Confidentiality/Non-Solicitation Agreement by (a) retaining NADM's Confidential Information and Trade Secrets (including the contact information of NADM's recruiting targets); (b) disclosing NADM's Confidential Information and Trade Secrets to her new DSO employer and/or using NADM's Confidential Information and Trade Secrets on behalf of her new DSO employer; (c) accepting employment with and working for a competing DSO, thereby actively and directly competing with NADM; and (d) failing to return NADM's property, including without limitation NADM's Confidential Information and Trade Secrets.

83.     As a proximate result of Phillips' actions, NADM has suffered and will continue to suffer harm which cannot be adequately compensated by monetary damages alone.

84.     With full knowledge of her post-employment obligations to NADM, Phillips is in breach of the Offer Letter Agreement and the Confidentiality/Non-Solicitation Agreement.

## COUNT IV
## UNFAIR COMPETITION

85.     NADM incorporates by reference the preceding Paragraphs of the Verified Complaint as if fully set forth herein.

86.     Phillips, by engaging in the conduct described above, has engaged in unfair competition with NADM.

87.     Phillips' conduct has caused and will continue to cause damage to NADM's business relationships with its recruiting prospects and other valuable business interests.

88.     Phillips' conduct has been and continues to be willful, intentional, and unprivileged and has caused and will continue to cause NADM to suffer immediate, irreparable harm, as well as other compensatory damages.

89.     Phillips' conduct, as described above, is contrary to honest industrial and commercial practices.

## PRAYER FOR RELIEF

WHEREFORE, North American Dental Management, LLC, respectfully prays the Court:

(a)     For a judgment in its favor and against Phillips on all claims herein;

(b)     For an award of damages in an amount to be determined by the trier of fact, together with pre- and post-judgment interest thereon at the maximum legal rate;

(c)     For injunctive relief in the form of an order:

   o     Requiring Phillips to deliver to a mutually agreeable third-party forensic vendor all devices and systems used by Phillips since January 1, 2023 and

any additional device or system that was used to disseminate or access NADM's information or on which NADM's information was found, to ensure that any and all Confidential Information and Trade Secrets are retrieved and permanently removed, and to pay for the services of such vendor;

o    Requiring Phillips to immediately return and deliver to NADM all NADM documents, data or property;

o    Prohibiting Phillips from (i) misappropriating, using or disclosing to any person or entity NADM's Confidential Information and Trade Secrets and (ii) possessing any originals, copies or summaries of NADM's Confidential Information and Trade Secrets in any form, electronic or otherwise;

o    Prohibiting Phillips from working for a DSO and requiring Phillips to abide by the terms of the Offer Letter Agreement, as tolled for the period of non-compliance; and

o    Requiring Phillips to provide quarterly affidavits for a period of one year verifying that she has complied with her obligations to NADM under the Order.

(d)    For additional equitable relief in the form of an order disgorging Phillips of any and all profits, compensation, or other amounts or benefits realized directly or indirectly as a result of or in connection with any breach of the Offer Letter Agreement and/or the Confidentiality/Non-Solicitation Agreement;

(e)    For an award of its reasonable costs, expenses, and legal fees incurred in this action as provided in the Defend Trade Secrets Act and/or Pennsylvania Uniform Trade Secrets Act;

(f)    For an award of actual and exemplary damages;

(f)    That the costs of this action be taxed to Phillips;

(g)    For a trial by jury on all issues so triable; and

(h)    For such other and further relief as the Court may deem just and proper.

Dated:  June 30, 2023                    Respectfully submitted,

                                         BUCHANAN INGERSOLL & ROONEY PC

                                         */s/ Erin J. McLaughlin*
                                         Erin J. McLaughlin *(PA 202044)*
                                         erin.mclaughlin@bipc.com
                                         Christian C. Antkowiak *(PA 209231)*
                                         christian.antkowiak@bipc.com
                                         Nicholas J. Bell *(PA 307782)*
                                         nicholas.bell@bipc.com

                                         Union Trust Building, Suite 200
                                         501 Grant Street
                                         Pittsburgh, PA  15219
                                         Phone:  412-562-8800
                                         Fax:  412-562-1041

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| NORTH AMERICAN DENTAL MANAGEMENT, LLC, | ) ) ) | |
| Plaintiff, | ) ) | Civil Action No. |
| v. | ) ) | *ELECTRONICALLY FILED* |
| MICHELE PHILLIPS, | ) ) | |
| Defendant. | ) ) | |

## **VERIFICATION**

I, Gabrielle McCarron, verify that I am the Senior Vice President of People ("NADM") and that I am authorized to execute this Verification on NADM's behalf.  Having read the foregoing Verified Complaint, I verify that the statements therein are based on information of which I have personal knowledge or that I have gathered from and confirmed with other agents of NADM.  While the language of the pleading is that of counsel, I verify that the averments contained in the foregoing Verified Complaint are true and correct to the best of my knowledge, information and belief.

I understand that this Verification is made subject to the penalties relating to unsworn falsification to authorities, 28 U.S.C. § 1746.

Dated:  June 28, 2023                    _____ *Gabrielle* _____