# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| THE RITESCREEN COMPANY, LLC, | ) |
| Plaintiff, | ) |
| v. | ) No. 1:23-cv-00778-JPW |
| MICHAEL J. WHITE and FLEXSCREEN LLC, | ) |
| Defendants. | ) |

### PRELIMINARY INJUNCTION ORDER

AND NOW, this _____ day of July 2023, at _____ o'clock, upon consideration of Plaintiff's Motion for Preliminary Injunction, the testimony and evidence received at the preliminary injunction hearing and for good cause shown, it is hereby ORDERED that said Motion is **GRANTED** for the following reasons and Defendants are hereby **ENJOINED** as follows:

1.   Defendant Lee Ann Trueblood ("Trueblood") entered into an Employment Agreement with Plaintiff AMG Resources Corporation ("AMG") on August 15, 2005.

2.   That Agreement was negotiated between Trueblood and AMG, set forth in writing, executed, and is supported by consideration.

3.   Section 3.2 of that Agreement required the parties, absent a termination for cause, to provide one-year written advance notice before terminating the Agreement.

4.   On November 20, 2008, Trueblood provided AMG with a written resignation letter dated November 22, 2008 in which Trueblood stated she was resigning effective January 1, 2009.

5. Trueblood, therefore, provided AMG with only six weeks written notice instead of the mandatory 52 weeks required by her Agreement.

6. Based on the Employment Agreement and Trueblood's resignation letter, I find AMG is likely to succeed on the merits of its Breach of Contract claim (Count I of its Complaint).

7. Section 4.6(a) of the Employment Agreement prohibits Trueblood from contacting or soliciting, directly or indirectly, any business or person that was an AMG customer or supplier of AMG during the 24-month period prior to her termination, but this prohibition contains an exception. Unless AMG terminates Trueblood's employment for "cause" as defined in the agreement, Trueblood is permitted to contact and solicit customers and suppliers as long as she both knew and regularly did business with them prior to her employment with AMG.

8. AMG has asserted alternative relief in its Complaint (Count VII) seeking a declaratory judgment that it may immediately terminate Trueblood's Employment Agreement for "cause" as defined in the agreement, which would eliminate the exception and trigger the full non-solicit provisions of Section 4.6(a). AMG has not made this assertion in its motion for preliminary injunction, and the Court is not considering the likelihood of success on the merits of that claim for purpose of the motion.

9. AMG has, however, established that Trueblood has contacted and solicited AMG customers and suppliers on behalf of Defendant Eddie Kane Steel Products, Inc. ("Eddie Kane") that she either did not know or did not regularly do business with prior to her employment with AMG. Based on these contacts and solicitations in violation of Section 4.6(a), I find that AMG is likely to succeed on the merits of its Breach of Contract claim (Count I of its Complaint).

10. Section 4.6(b) of the Employment Agreement prohibits Trueblood from soliciting, directly or indirectly, any person who was an AMG employee in the six month before or after the termination of her employment with AMG to become an employee, consultant, partner or principle of Trueblood or any person or business with which or whom she is affiliated.

11. Trueblood was aware of and actively involved in Eddie Kane's recruitment and hiring of former AMG employees Leonard Mathews ("Mathews") and Nester "Tre" Popa III ("Popa").  Based on her direct or indirect solicitation of the former AMG employees, I find that AMG is likely to succeed on the merits of its Breach of Contract claim (Count I of its Complaint).

12. Based on the terms of Section 3.2, Trueblood's resignation does not become effective until November 20, 2009: one-year after Trueblood provided the written notice of her resignation.

13. While employed with AMG and until her resignation becomes effective, Trueblood, the Vice President and General Manager of Chicago Plate Products ("CPP"), a division of AMG, and the highest-ranking employee of CPP, has fiduciary duties and/or a duty of loyalty to act in good faith on behalf of AMG under Sections 1.2, 4.2, and 4.5 of her Employment Agreement and common law.

14. Specifically, Section 4.2 requires Trueblood to "promptly inform" AMG of all business opportunities and to "turn over" such business opportunities to AMG.

15.  While still employed by AMG and on its payroll, Trueblood has breached (and continues to breach) her duty to AMG by (a) acting on behalf of Eddie Kane to the detriment of AMG; (b) selling AMG's products to Eddie Kane, (c) conspiring with Eddie Kane to breach her Agreement with AMG, (d) providing Eddie Kane a list of CPP's top customers, (e) going to work

for Eddie Kane in its Schererville, Indiana offices while still on AMG's payroll, (f) sending emails to AMG's customers as a representative of Eddie Kane while still on AMG's payroll, (g) planning to and/or attending sales meetings with Eddie Kane's sales team in Western Pennsylvania, and (h) planning the hiring and solicitation of CPP's customers and employees on behalf of Eddie Kane, all the while knowing Eddie Kane desired to establish a presence in the mid-west to compete directly with AMG.

16. Based on these verified facts, I find AMG is likely to succeed on its breach of the duty of loyalty and/or fiduciary duty claim (Count III of the Complaint).

17. Absent this Court entering its Temporary Restraining Order, Eddie Kane intended to employ Trueblood in a position substantially similar to her position at AMG and in an office just 12 miles away from her office at AMG.

18. Because of Trueblood's position with AMG in which she had almost complete autonomy to develop AMG's customer and supplier relationships and confidential and proprietary customer, financial, pricing and business information, it is inevitable that Trueblood will disclose and use that information as an Eddie Kane employee in violation of Section 4.3 of her Agreement to compete directly against AMG for the same suppliers and customers in the secondary steel plate industry.

19. Further, the evidence shows that Trueblood disclosed highly confidential and valuable information of CPP, including its top ten customer list, to Eddie Kane and at Eddie Kane's encouragement, Trueblood devoted considerable time and energy while on AMG's payroll and without AMG's knowledge to further Eddie Kane's competitive interests.

20. Based on these verified facts, I find it likely that AMG will succeed on the merits of its claim for misappropriation of confidential information, trade secrets, customer relationships/inevitable disclosure (Count IV).

21. Based on the nature of Trueblood's wrongful actions, I find that AMG has and is likely to continue to suffer irreparable harm because: "[w]ithin the Third Circuit, courts have found that injury to goodwill and the use of a company's confidential information are the types of injuries which would constitute irreparable harm that cannot be compensated with monetary damages." *Fisher Bioservices, Inc.,* No. Civ. A. 06-567, 2006 WL 1517382, at *20 (E.D. Pa. May 31, 2006).

22. Further, irreparable harm is also likely to result from AMG's loss of its customer and supplier relationships, which are likely as Trueblood was responsible for developing them. *Hillard v. Medtronic, Inc.*, 910 F. Supp. 173, 179 (M.D. Pa. 1995).

23. Given the verified facts in this case, the enforcement of Trueblood's notice provision, requirement to provide all business opportunities to AMG, non-disclosure covenant, and non-solicitation restrictions will not cause greater harm to Trueblood and Eddie Kane than denial of the relief will cause to AMG.

24. This is particularly true in this case as it appears that Eddie Kane paid a premium to hire Trueblood ($500,000 annual salary plus 1% of the business) in order to obtain access to CPP's confidential information, customer and supplier relationships, and employees that it could not obtain by buying CPP from AMG.

25. The public interest supports enforcement of the valid notice provision, non-disclosure, and non-solicitation provisions in Trueblood's Employment Agreement with AMG. *See National Business Services, Inc. v. Wright*, 2 F. Supp. 2d 701, 709 (E.D. Pa. 1998). *See also*

*Vecotr Security, Inc. v. Stewart*, 88 F. Supp. 2d 395, 402 (E.D. Pa. 2000) (court held that it was in the public interest to uphold restrictive covenant); *Rita's Water Ice Franchise Corp. v. DBI Investment Corp.*, No. 96-306, 1996 WL 165518, *1, *5 (E.D. Pa., April 8, 1996) (public interest supports contractual enforcement by preventing competition in violation of valid restrictive covenant).

26. It is appropriate under these circumstances for this preliminary injunction order based on the evidence that I heard at the preliminary injunction hearing, in particularly due to the irreparable harm that Trueblood and Eddie Kane are conspiring to effectuate upon AMG (and apparently, having been for some time without AMG's knowledge).

BECAUSE OF THE FINDINGS SET FORTH ABOVE:

27. Defendant Trueblood is hereby enjoined from working for Eddie Kane or any other competitor of AMG under Sections 3.2, 4.2, and 4.5 of the Agreement as she cannot divide her loyalties between AMG, to which she is contractually obligated to provide, and Eddie Kane.

28. Eddie Kane is hereby enjoined from allowing Trueblood to perform any services on its behalf and from using any of AMG's confidential information that Trueblood, Mathews, Popa, or other AMG employees have provided.

29. Defendant Trueblood is hereby enjoined from misappropriating or disclosing to any person or entity AMG's confidential information under Section 4.3 of the Agreement.

30. Defendants Trueblood and Eddie Kane shall immediately return and deliver to AMG all AMG property, whether in paper or electronic form, and including, but not limited to, any confidential information under Section 4.3 of the Agreement.

31. Defendant Trueblood is enjoined from soliciting, directly or indirectly, any customer or source of supply of AMG.

32. Defendant Trueblood is enjoined from soliciting, directly or indirectly, any AMG employee.

33. Defendants Trueblood and Eddie Kane are hereby enjoined from assisting, directly or indirectly, any person or entity, by any means whatsoever, in any act prohibited of Defendants by virtue of this Order.

34. On a monthly basis, Eddie Kane and Trueblood shall verify in writing under oath to AMG their compliance with the terms of this Order.

35. The $10,000.00 bond posted by AMG shall remain in effect until further Order.

36. The preliminary injunction order shall continue in effect until further Order of the Court.

_____
United States District Judge