IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| NORTH AMERICAN DENTAL MANAGEMENT, LLC,<br>　　　　　Plaintiff,<br><br>　v.<br><br>MICHELE PHILLIPS,<br><br>　　　　　Defendant. | Civil Action No. 2:23-cv-01202<br><br>*Electronically filed* |

**PROPOSED FINDINGS OF FACT AND CONCLUSIONS OF LAW**

Plaintiff North American Dental Management, LLC ("NADM" or "Company"), by and through its undersigned counsel, and in accordance with the Practices and Procedures of Judge W. Scott Hardy, files these Proposed Findings of Fact and Conclusions of Law in support of its Motion for Temporary Restraining Order and Preliminary Injunction pursuant to Rule 65(a) and (b) of the Federal Rules of Civil Procedure against Defendant Michele Phillips ("Phillips" or "Defendant") as follows:

**I.     PROPOSED FINDINGS OF FACT**

**A.     NADM's Business**

1. Headquartered in Pittsburgh, PA, NADM is a DSO dedicated to offering best-in-class dental care to every patient at every visit at more than 200 affiliated dental practices.  (ECF No. 6, ¶ 21).

2. As a leading DSO, NADM specializes in providing non-clinical administrative services to dental practices, supporting clinical decisions by a group of affiliated dentists who collaborate to advance patient care based on a unique data and outcome-driven approach.  *Id.*

3.	In the 15 years since its founding, NADM has expanded its footprint of services to provide administrative support services to dental practices in 15 states. (ECF No. 6, ¶ 22).

4.	NADM's footprint enables it to provide excellent service and rapid response to its affiliated dental practices throughout the United States. *Id.*

5.	Through its talented team of human resources, marketing, budgeting, and information technology professionals, NADM is able to provide a full range of non-clinical services to support dentists and dental practices. (ECF No. 6, ¶ 23).

6.	NADM also recruits doctors and dental professionals for its supported practices as it continues to expand the reach of the services provided by the supported practices across the country. *Id.*

7.	These professionals and practices are empowered to make clinical decisions intent on delivering best-in-class oral care while providing exceptional patient experience. *Id.*

8.	NADM today employs more than 3,000 people, including about 400 team members in non-clinical positions. *Id.*

9.	NADM's commitment to this mission of excellence in dental services has transformed it into a leading dental services organization. *Id.*

10.	NADM relies on its robust recruiting team to develop and grow business opportunities for the dental practices and dentists to whom it provides services. (ECF No. 6, ¶ 24).

11.	Until recently, NADM's valuable recruiting force was led by Phillips, its Manager of Doctor Recruiting. *Id.*

12.	In that role, NADM entrusted Phillips with the Company's most important and highly confidential and proprietary business metrics and plans, including, but not limited to, its information about recruiting strategies, prospective recruiting targets of dentists, dental practices,

and dental professionals, geofencing of competitors, competitive strategies, contract terms, and business development and marketing initiatives. *Id.*

13.     Given her knowledge and experience, Phillips was tasked with managing all matters for NADM's doctor recruiting efforts across the country. *Id.*

14.     NADM uses customized recruiting solutions to locate, engage, recruit, and onboard highly qualified doctors and dental professionals to its affiliated practices. (ECF No. 6, ¶ 25).

15.     This requires NADM to have an intimate knowledge of prospective recruiting targets, market data, and competitor analytics. *Id.*

16.     NADM invests significant resources in developing and fostering these potential recruiting targets through a dedicated group of recruiting professionals, such as Phillips. *Id.*

17.     NADM highly compensates these professionals and provides them with significant administrative support and business-related expense reimbursement for this purpose, which all come at great expense to NADM. *Id.*

18.     NADM's recruiting professionals are privy to vast amounts of confidential information and trade secrets related to NADM's recruiting strategies and potential recruiting targets. (ECF No. 6, ¶ 26).

19.     NADM has developed a robust database of highly proprietary information, which includes lists of candidates, salary requirements and details by dentist, recruiting presentations, NADM's recruitment strategy, NADM's recruitment and screening forms, and complete candidate files. *Id.*

B.     **NADM Hires, Trains And Promotes Phillips To Manager of Doctor Recruiting**

20.     On October 29, 2018, NADM hired Phillips as a Dentist Recruiter. (ECF No. 6, ¶ 27).

21. Phillips left for a brief period only to return to NADM a few months later. *Id.*

22. On or about May 10, 2021, NADM rehired Phillips as a Brand Ambassador. (ECF No. 6, ¶ 28).

23. In connection with her employment, she received an increase in compensation and additional job duties and, in exchange, signed the Offer Letter Agreement, dated May 10, 2021, as well as a Confidentiality/Non-Solicitation Agreement, dated May 13, 2021. (ECF No. 6, Exs. A, B).

24. In that role, Phillips was responsible for gaining and maintaining a deep knowledge of the dental services industry; developing, maintaining and growing NADM's recruiting relationships across the country; and targeting and recruiting dentists, dental professionals, and dental practices. (ECF No. 6, ¶ 29).

25. On or about October 1, 2022, NADM promoted Phillips to Manager of Doctor Recruiting; she held that position until she resigned from NADM effective June 7, 2023. (ECF No. 6, ¶ 30).

26. Phillips' elevation to Manager of Doctor Recruiting carried with it a significant increase in her compensation package, including an annual base salary increase to $125,000 and participation in NADM's lucrative bonus program with eligibility for a target bonus of 10%. *Id.*

27. In addition to being highly compensated, Phillips reported directly to NADM's Senior Vice President, People, and indirectly to its Chief Executive Officer. *Id.*

28. In connection with her responsibilities as Manager of Doctor Recruiting, Phillips had access to NADM's most valuable recruiting relationships and its confidential and proprietary information and trade secrets which included but were not limited to:

    (a) <u>Technical information</u>, such as information regarding dental services specifications, performance, integration capabilities, research and

development objectives and data, plans, intellectual property, applications and other design, service or performance data;

(b) <u>Information about existing or prospective recruiting targets</u>, such as target lists, contact information, prospect files, compensation details and requirements, transaction data, dental practice financials, professional business methodologies, recruiting presentations, recruiting bonuses, sourcing reports, offer details, hires and declines, patient revenue history, pricing, and credit information;

(c) <u>Business, financial and strategic information</u>, such as NADM's regional recruiting strategy, recruiting budget, sales and earnings information, profit margins, accounting information, financial information, pricing policies, sales compensation methodologies, margins, investment plans and budgets, forecasts, strategies, plans and prospects;

(d) <u>Organizational and operational information</u>, such as recruiting policies, procedures and forms, onboarding policies and procedures, personnel and compensation data, information concerning utilization or capabilities/performance of personnel, logistics management techniques, methodologies and systems including CRM and methods of operation, data and facilities plans; and

(e) <u>Advertising, marketing, sales or strategy information</u>, such as plans, programs techniques, strategies, results and budgets, pricing and volume strategies, and market research, and training and development courses.

(ECF No. 6, ¶ 31, Ex. B).

29. As Manager of Doctor Recruiting, Phillips was intimately familiar with NADM's business and critical to the Company's nationwide recruiting efforts. (ECF No. 6, ¶ 32).

30. Phillips was exposed to virtually all of NADM's recruiting targets for doctors, dental professionals and dental practices across the United States, either through the Company's direct introduction or through her regular access to NADM's recruiting database covering the 15 states in which NADM provides services to dental practices and its efforts to recruit across the United States more broadly. *Id.*

31. Moreover, NADM trained Phillips on and exposed her to its business practices and recruiting strategies regarding the dental services and solutions NADM provides to its network of affiliated dental practices. *Id.*

32. In sum, NADM provided Phillips with Confidential Information and Trade Secrets as required to perform her job and, in turn, Phillips contributed to the wealth of that Confidential Information and Trade Secret information over time. *Id.*

C. **Phillips' Contractual Obligations to NADM**

33. In connection with Phillips' rehiring as Brand Ambassador, NADM required Phillips to execute the Offer Letter Agreement to protect its confidential information and trade secrets, valuable relationships, and investment in its recruiting strategies and targets — all of which Phillips would have access to in her new role. (ECF No. 6, ¶ 33, Ex. A).

34. In exchange for her execution of the Offer Letter Agreement, Phillips received the position and the increased compensation package described above. *Id.*

35. In Section 5 of the Offer Letter Agreement, Phillips agreed she would not compete with NADM for a period of twelve (12) months following her employment with NADM as follows:

> You acknowledge that (a) you will perform services of a unique nature for the Company, and that your performance of such services to a competing business will result in irreparable harm to the Company (and its subsidiaries or affiliates) . . . Accordingly, you will not, directly or indirectly, (i) for so long as you are employed by the Company (or any [sic] its subsidiaries or affiliates) and for a period of twelve (12) months thereafter, no matter what the reason for such termination or whether such termination is initiated by you or the Company, own (beneficially or otherwise), manage, operate, control, be employed by, participate in (as a partner, director or otherwise), or perform services for (including as a consultant or advisor) any person or entity that is engaged in (or provide financial assistance to or otherwise be engaged in any manner in the operation of) any business that provides management and operational services

>> and related functions for dental practices, including specialty dental practices . . . .

(ECF No. 6, ⁋ 34, Ex. A § 5).

36. Additionally, Section 5 goes on to prohibit Phillips from soliciting certain categories of employees and clients, as follows:

> . . . (ii) for so long as you are employed by the Company (or any of its subsidiaries or affiliates) and for a period of twelve (12) months thereafter, no matter what the reason for such termination or whether such termination is initiated by you or the Company, (A) solicit, induce or attempt to induce any employee or individual retained as an independent contractor of the Company (or any [sic] its subsidiaries or affiliates) to terminate his or her employment or contracting relationship with such entity, or to become an employee or independent contractor of any other person or entity, (B) solicit, induce or attempt to induce any customer, payor, supplier or other business relation of the Company (or any [sic] its subsidiaries or affiliates) to cease doing business with such entity or materially and adversely interfere with the relationship between any such customer, payor, supplier or other business relation and such entity, or (C) solicit, induce or attempt to induce any customer, payor, supplier or other business relation of the Company (or any [sic] its subsidiaries or affiliates) to conduct with anyone else any business or activity that such business relation could conduct with the Company (or any [sic] its subsidiaries or affiliates).

(ECF No. 6, ⁋ 35, Ex. A § 5).

37. Also in the Offer Letter Agreement, Phillips acknowledged and agreed "not to, during [her] employment or thereafter, disclose to any person or entity or use for [her] own account or for the account of any person or entity (other than the Company (or its subsidiaries and affiliates) any confidential information for the company without the prior written consent of the company, unless and to the extent that such disclosure is required by law." (ECF No. 6, ⁋ 36, Ex. A § 7).

38. In the Confidentiality/Non-Solicit Agreement, Phillips agreed that she would have "extensive access to and become familiar with, and may develop or contribute to, the Confidential Information" and recognized that "the Confidential Information provides the Company with a

competitive advantage over others in the marketplace and is vital to the success of the Company." (ECF No. 6, ¶ 37, B at 1).

39. Phillips further agreed that "the Company would be irreparably injured and the good will of the Company would be irreparably damaged if [she] neglected to follow the guidelines outlined within this Agreement" and she also agreed that "the activities discussed in [the] Agreement are reasonable in scope and duration and do not unreasonably restrict [her] association with other business entities . . . ." (ECF No. 6, ¶ 38, B at 1).

**D.  Phillips Resigns From NADM And Immediately Breaches Her Legal Obligations To NADM**

40. On or about May 25, 2023, Phillips informed NADM that she was resigning from the Company and that she wanted her resignation to take effect June 9, 2023. (ECF No. 6, ¶ 40).

41. On her last day with NADM, Phillips failed to immediately return her Company-issued laptop computer, which contained NADM's confidential information and trade secrets. (ECF No. 6, ¶ 41).

42. Phillips remained in possession of her laptop for approximately two weeks after her last day. *Id.* Phillips used or had access to the following types of documents leading up to her resignation and that would be maintained on her laptop:

- A proprietary digital recruitment marketing strategy built by NADM, including information such as leveraging recruitment artificial intelligence technologies, geofencing and geotargeting, bulk text messaging, and drip campaigns;
- 2023 People Strategy Presentation;
- 2023 HR strategy and PowerPoint presentation;
- HR People Strategy with information on retention, rewards, elevation, analytics, and acquisitions;
- Practice Hours Expansion Workplan regarding how to execute on hours expansion;
- Illinois Recruiting Strategy;
- Recruitment Strategy Slides; and
- Doctor Recruiting strategy slides.

43. NADM learned almost simultaneously with Phillips' resignation that she started working for an undisclosed DSO directly competing with NADM. (ECF No. 6, ⁋ 42).

### E. Phillips Does Not Respond To NADM's Letters Regarding Phillips' Obligations To NADM

44. On May 31, 2023, NADM, through counsel, sent a letter to Phillips demanding that she honor her obligations to NADM, immediately cease and desist her employment with any competing DSO, and immediately identify and return any of NADM's Confidential Information and Trade Secrets in Phillips' possession, including her company-issued laptop. (ECF No. 6, ⁋ 43, Ex. C).

45. Phillips never responded to this letter. (ECF No. 6, ⁋ 43).

46. On June 9, 2023, NADM, again through counsel, sent a letter to Phillips making clear that NADM would not accept her silence and reiterating that it intended to enforce Phillips' contractual obligations. (ECF No. 6, ⁋ 44, Ex. D).

47. Phillips never responded to this letter. (ECF No. 6, ⁋ 44).

48. Phillips waited approximately two weeks to return her company-issued laptop and/or still has not confirmed that she is not in possession of NADM's Confidential Information and Trade Secrets. (ECF No. 6, ⁋ 45).

49. Phillips has failed to meaningfully respond to any of NADM's above-referenced demands, including providing reassurances to confirm that Phillips did not use, copy or disclose NADM's confidential information and trade secrets. ((ECF No. 6, ⁋ 46).

50. After Phillips belatedly returned her NADM-issued laptop computer, NADM had it forensically examined. (ECF No. 6, ⁋ 47).

51. The data shows that, in the days prior to her resignation, Phillips connected a personal USB Mass Storage Device to her NADM laptop and copied and saved to that USB drive

NADM's most important confidential and trade secret information related to its recruiting strategy, targets, compensation information, offer letter details, complete files on NADM recruiting targets and recruiting presentations. *Id.*

52. Those 400-plus files included, among others, 2023\Dentist Recruiting logins 2023.xlsx, 2023\1 How to and contacts.docx, 2023\All Dentist Candidate Details and to send to a GD or Specialist, 2023\All Dentist Salary Details, 2023\Dental School Presentation, 2023\New Hire Onboarding, 2023\Recruitment Strategy – regional, 2023\Recruitment Alignment, 2023\Sourcing, 2023\All Forms and Dr. Recruitment Processes, 2020\IT Reports - Active Starts and Recinds, 2020\Doc Compensation, 2020\Candidate Files Folder, 2023\2022 - Recruiting Data, 2023\Offer Details Hires and Declines, and 2023\Recruiting Bonuses, 2023\Sourcing reports. *Id.*

### F.    NADM Protects its Confidential Information and Trade Secrets

53. NADM protects its investment in its Confidential Information and Trade Secrets. (ECF No. 6, ₽ 50).

54. NADM has taken various other steps to protect its Confidential Information and Trade Secrets, including: (a) using network firewalls, password protection and security credentials to prevent unauthorized access to its servers; (b) limiting its employees' access to information to that which is necessary to fulfill their job functions; (c) controlling physical access to NADM's offices, facilities and information; (d) requiring employees with access to its trade secrets to sign restrictive covenants, including restrictive covenant agreements; (e) implementing and enforcing policies and procedures to protect its Confidential Information and Trade Secrets, and (f) enforcing its employees' obligations with respect to its trade secrets. (ECF No. 6, ₽ 51).

55. In addition, all NADM employees are subject to employee policies, such as NADM's Team Member Handbook, which requires them to maintain and keep confidential NADM's Confidential Information and Trade Secrets. (ECF No. 6, ₽ 52).

## II.     PROPOSED CONCLUSIONS OF LAW

1. Philips entered into the Offer Letter Agreement with NADM on May 10, 2021.

2. The Offer Letter Agreement is an enforceable and valid agreement supported by adequate consideration.

3. Phillips entered into the Confidentiality/Non-Solicitation Agreement on May 13, 2021.

4. The Confidentiality/Non-Solicitation Agreement is an enforceable and valid agreement supported by adequate consideration.

5. In Section 5 of the Offer Letter Agreement, Phillips agreed she would not compete with NADM for a period of twelve (12) months following her employment with NADM.

6. In Section 7 of the Offer Letter Agreement, Phillips acknowledged and agreed "not to, during [her] employment or thereafter, disclose to any person or entity or use for [her] own account or for the account of any person or entity (other than the Company (or its subsidiaries and affiliates) any confidential information for the company without the prior written consent of the company, unless and to the extent that such disclosure is required by law.

7. In the Confidentiality/Non-Solicitation Agreement, Phillips agreed that she would have "extensive access to and become familiar with, and may develop or contribute to, the Confidential Information" and recognized that "the Confidential Information provides the Company with a competitive advantage over others in the marketplace and is vital to the success of the Company."

8. Phillips further agreed that "the Company would be irreparably injured and the good will of the Company would be irreparably damaged if [she] neglected to follow the guidelines outlined within this Agreement" and she also agreed that "the activities discussed in [the]

Agreement are reasonable in scope and duration and do not unreasonably restrict [her] association with other business entities . . . ."

9. The post-employment restrictions on competition, solicitation and non-disclosure contained in the Offer Letter Agreement and Confidentiality/Non-Solicitation Agreement are fair, reasonable, and necessary to protect the legitimate business interests of NADM.

10. Because of Philips' position with NADM, she had access to NADM's Confidential Information and Trade Secrets (as defined in the Verified Amended Complaint).

11. Philips' employment with a direct competitor in a similar role within twelve (12) months of employment with NADM constitutes a breach of contract.

12. While still employed by NADM and on its payroll, Philips breached her duty to NADM by connecting a personal USB Mass Storage Device to her NADM laptop and copying and saving to that USB drive NADM's most important confidential and trade secret information related to its recruiting strategy, targets, compensation information, offer letter details, complete files on NADM recruiting targets and recruiting presentations.

13. Philips, improperly and without authorization, misappropriated, retained, used, disclose and/or exploited NADM's confidential and proprietary information and trade secrets.

14. Based on the Offer Letter Agreement and Confidentiality/Non-Solicitation Agreement, I find NADM is likely to succeed on the merits of its Defend Trade Secrets Act claim (Count I) and Pennsylvania Uniform Trade Secrets Act claim (Count II).

15. Based on the Offer Letter Agreement and Confidentiality/Non-Solicitation Agreement, I find NADM is likely to succeed on the merits of its breach of contract claim (Count III).

16. Based on Philips' employment with NADM, I find NADM is likely to succeed on the merits of its breach of fiduciary duty claim (Count IV).

17. Based on Philips' conduct, I find NADM is likely to succeed on the merits of its unfair competition claim (Count V).

18. NADM's recruiting relationships, goodwill, market position, business opportunities, competitive advantage, Confidential Information and Trade Secrets, and relations with its remaining employees will be irreparably harmed if a preliminary and permanent injunction is not entered.

19. NADM will suffer far greater harm if a preliminary and permanent injunction is not granted than Phillips will suffer if one is granted.

20. Absent this Court entering a temporary restraining order, Philips intends to/already is employed in a position substantially similar to her position at NADM at a competing DSO.

21. For her part, Phillips will suffer no harm, but simply be ordered to honor the promises she made.

22. Granting a preliminary injunction would serve the public interest.

23. NADM has demonstrated that it is entitled to a temporary restraining order.

24. Pursuant to Federal Rule of Civil Procedure 65(c), NADM is required to post an injunction bond in the amount of $150,000.

Dated: July 11, 2023                                Respectfully submitted,

                                                    /s/ Erin J. McLaughlin
                                                    Erin J. McLaughlin *(PA 202044)*
                                                    erin.mclaughlin@bipc.com
                                                    Christian C. Antkowiak *(PA 209231)*
                                                    christian.antkowiak@bipc.com
                                                    Nicholas J. Bell *(PA 307782)*

nicholas.bell@bipc.com
BUCHANAN INGERSOLL & ROONEY PC
Union Trust Building, Suite 200
501 Grant Street
Pittsburgh, PA  15219
Phone: 412-562-8800
Fax:  412-562-1041

*Attorneys for Plaintiff, North American Dental Management, LLC*

**CERTIFICATE OF SERVICE**

    I hereby certify that a true and correct copy of the foregoing was served via email and attempted to be served via personal service on the 11th day of July 2023, to the following:

Michele Phillips<br>
6573 Pocklington Road<br>
Britton, MI  49229

<i>/s/ Erin J. McLaughlin</i>