IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| NORTH AMERICAN DENTAL MANAGEMENT, LLC, <br>                     Plaintiff, <br> v. <br> MICHELE PHILLIPS, <br>                     Defendant. | Civil Action No. 23-1202 |

## MEMORANDUM AND ORDER OF COURT

Presently pending before the Court is Plaintiff North American Dental Management, LLC's ("Plaintiff") Second Motion for Temporary Restraining Order and Preliminary Injunction (Docket No. 22 ("Motion")), and Plaintiff's Motion for an Expedited Hearing (Docket No. 24).[1] The Court has reviewed Plaintiff's motions, Plaintiff's supporting brief (Docket No. 23) and the Verified Amended Complaint (Docket No. 6) and exhibits referenced therein, Plaintiff's Declaration Regarding Service (Docket No. 21), and Plaintiff's Proposed Findings of Fact and Conclusions of Law (Docket No. 26). The Court further notes that Plaintiff has "made serious efforts to contact the opposing party or its counsel prior to seeking relief," as required by Paragraph II.F of the undersigned's Practices and Procedures, by making numerous attempts to effectuate personal service upon Defendant Michele Phillips ("Defendant"), and by providing notice of the Verified Amended Complaint and the above-mentioned motions and related filings to Defendant via email at an email address from which Defendant has previously responded to correspondence.[2]

---

[1] Along with these motions, Plaintiff also filed its Second Motion for Order of Court Directing Preservation of Documents, Electronically Stored Information and Things (Docket No. 25) and its Second Motion to Expedite Discovery (Docket No. 27), which the Court will rule on separately.

[2] On July 10, 2023, Plaintiff's first Motion for Temporary Restraining Order and Preliminary Injunction was denied without prejudice because the motion failed to comply with Federal Rule of Civil Procedure 65(b)(1)(B), given that it did not contain a certification in writing by Plaintiff's counsel detailing any efforts made to give notice to

1

(Docket No. 21). Additionally, on July 14, 2023, Defendant filed an Affidavit of Service indicating that personal service had been effectuated upon Defendant on July 12, 2023. (Docket No. 28).

In its Motion, Plaintiff requests that the Court issue a temporary restraining order ("TRO") and a preliminary injunction ordering Defendant to: (1) cease unlawfully competing with Plaintiff; (2) immediately return all Confidential Information and Trade Secrets (as defined in the Verified Amended Complaint) in her possession; (3) enjoin Defendant from possessing, using and/or disclosing Plaintiff's Confidential Information and Trade Secrets; and (4) enjoin Defendant from competing with Plaintiff in violation of her non-competition obligations in her Offer Letter Agreement (as defined in the Verified Amended Complaint). (Docket No. 22 at 1).

After careful consideration of Plaintiff's Motion and supporting brief, the Court is persuaded that Plaintiff has met the standard for obtaining a TRO, and the Court will therefore enter a TRO, defer ruling on Plaintiff's Motion for an Expedited Hearing, and defer ruling on Plaintiff's request for a preliminary injunction.

## I. STANDARD OF REVIEW

A party seeking a TRO must establish the following: (1) a likelihood of success on the merits; (2) that denial of injunctive relief will result in irreparable harm; (3) that granting the TRO will not result in irreparable harm to the defendants; and (4) that granting the TRO is in the public interest. *See Maldonado v. Houstoun*, 157 F.3d 179, 184 (3d Cir. 1998). The requirements for a TRO are the same as those for a preliminary injunction. *See Saluck v. Rosner*, No. CIV.A. 98-5718, 2003 WL 559395, at *2 (E.D. Pa. Feb. 25, 2003). Upon consideration, the Court finds that

---

Defendant and the reasons why notice should not be required, and because the motion failed to comply with Paragraph II.F of the undersigned's Practices and Procedures addressing injunctions and temporary restraining orders. (Docket No. 17). That same day, the Court held a telephonic status conference to address whether renewed motions would be forthcoming, during which conference Plaintiff's counsel confirmed that Defendant had been provided with call information to join the conference, but Defendant did not appear. (Docket No. 19).

each of these four elements is satisfied in the matter presented here. In so ruling, the Court notes that the primary purpose of a TRO and/or preliminary injunction is to preserve the status quo until a decision can be made on the merits. *See Hope v. Warden York Cnty. Prison*, 956 F.3d 156, 160 (3d Cir. 2020).

## II. DISCUSSION

First, the Court agrees with the argument and reasoning provided in Plaintiff's brief, and finds that the facts averred in the Verified Amended Complaint and its exhibits (Docket Nos. 6, 6-1, 6-2, 6-3, 6-4, 6-5) establish more than a reasonable probability of success on the merits such that Plaintiff's Motion for a TRO should be granted. In order to establish a reasonable probability of success on the merits such that a TRO should issue, a "plaintiff need only prove a prima facie case, not a certainty that [it] will win." *Highmark, Inc. v. UPMC Health Plan, Inc.*, 276 F.3d 160, 173 (3d Cir. 2001); *see also Reilly v. City of Harrisburg,* 858 F.3d 173, 179 n.3 (3d Cir. 2017) ("[The court does] not require at the preliminary stage a more-likely-than-not showing of success on the merits because a likelihood of success on the merits does not mean more likely than not." (internal quotation marks and citation omitted)). Here, Plaintiff has met this burden for its asserted causes of action.

More specifically, Plaintiff avers that Defendant had access to, and is still in possession of, Plaintiff's Confidential Information and Trade Secrets, and that Defendant is now working for a competitor of Plaintiff but cannot do so without inevitably calling upon or using Plaintiff's Confidential Information and Trade Secrets, in violation of the Defend Trade Secrets Act of 2016 ("DTSA"), 18 U.S.C. § 1831 *et seq.*, and the Pennsylvania Uniform Trade Secrets Act ("PUTSA"), 12 Pa. Cons. Stats. Ann. § 5301 *et seq.* Plaintiff also alleges that Defendant is in violation of the Offer Letter Agreement, which includes an enforceable restrictive covenant under Pennsylvania

law, and the Confidential/Non-Solicitation Agreement, and that she is thus liable for breach of contract. Plaintiff further avers that Defendant has committed various wrongful acts including, but not limited to, misappropriating Plaintiff's Confidential Information and Trade Secrets and violating her Offer Letter Agreement and the Confidentiality/Non-Solicitation Agreement, rendering Defendant liable to Plaintiff for unfair competition under Pennsylvania law. Given Plaintiff's allegations, at this juncture, the Court finds that Plaintiff has established more than a reasonable probability of success on the merits of its claims.

Second, the Court finds that the averments asserted in the Verified Amended Complaint and supporting exhibits demonstrate that a TRO is necessary to prevent immediate and irreparable harm to Plaintiff. Plaintiff has shown sufficiently that, absent a TRO, Defendant is likely to harm Plaintiff by continuing to misappropriate its Information and Trade Secrets for the benefit of Defendant's new employer and herself. *See Campbell Soup Co. v. ConAgra, Inc.*, 977 F.2d 86, 92-93 (3d Cir. 1992) (noting that "an intention to make imminent or continued use of a trade secret or to disclose it to a competitor will almost certainly show immediate irreparable harm"); *Healthcare Servs. Grp., Inc. v. Fay*, 597 F. App'x 102, 103-04 (3d Cir. 2015) ("'[T]he threat of the unbridled continuation of the violation [of a restrictive covenant] and the resultant incalculable damage to the former employer's business'" establishes irreparable harm. (quoting *John G. Bryant Co. v. Sling Testing & Repair, Inc.*, 369 A.2d 1164, 1167 (Pa. 1977))); *Masure v. Massa*, 692 A.2d 1119, 1122 (Pa. Super. Ct. 1997) (holding that the plaintiff "suffered irreparable injury as the number of lost customers cannot be accurately calculated").

Third, the Court finds that the balance of harms clearly and strongly weighs in favor of Plaintiff. Defendant will not be entirely prevented from working, as she will only be prohibited from competing directly with Plaintiff and using Plaintiff's Confidential Information and Trade

Secrets which, in any event, she has no right to use for the benefit of anyone but Plaintiff. In contrast, if the Court were to deny the TRO, Plaintiff may be harmed by having its Confidential Information and Trade Secrets used by Defendant and/or revealed to its competitors. *See Fisher Bioservs., Inc. v. Bilcare, Inc.*, No. Civ.A. 06-567, 2006 WL 1517382, at *21 (E.D. Pa., May 31, 2006) (enforcing an agreement that precluded an employee from using confidential information and soliciting business opportunities from customers); *Nat'l Bus. Servs., Inc. v. Wright*, 2 F. Supp. 2d 701, 709 (E.D. Pa. 1998) (finding that the balance of harms weighed in favor of the employer because the employee would still be able to earn a livelihood); *CentiMark Corp. v. Lavine*, No. 11cv757, 2011 WL 3209106, at *5 (W.D. Pa. July 28, 2011) (noting that numerous courts that have enforced restrictive covenants against an employee have found that "regardless of the relative wealth of the employer and employee, the harm to the employer trumps the harm to the employee") (internal quotation marks and citations omitted)).

Fourth, the Court finds that the granting of a TRO in this case is in the public interest. "[T]he public has a clear interest in ensuring fair business practices and safeguarding trade secrets." *Par Pharm., Inc. v. QuVa Pharma, Inc.*, 764 F. App'x 273, 280 (3d Cir. 2019). Additionally, "restrictive covenants serve important business interests in today's economy," and they "have developed into important business tools to allow employers to prevent their employees and agents from learning their trade secrets, befriending their customers and then moving into competition with them." *Quaker Chemical Corp. v. Varga*, 509 F. Supp. 2d 469, 481 (E.D. Pa. 2007); *Victaulic v. Tieman*, 499 F.3d 227, 237 (3d Cir. 2007) (internal quotation marks and citations omitted). Thus, the public interest is best served here by enforcing such important business tools. *See Wright*, 2 F. Supp. 2d at 709.

5

Therefore, the Court finds that all four elements are satisfied here and necessitate granting a TRO in favor of Plaintiff.

### III. A BOND IS REQUIRED IN THIS INSTANCE

Federal Rule of Civil Procedure 65(c) provides, "The court may issue a preliminary injunction or a temporary restraining order only if the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained." Furthermore, according to the Court of Appeals for the Third Circuit:

> As we held in *Frank's GMC Truck Center, Inc. v. General Motors Corp.*, 847 F.2d 100, 103 (3d Cir.1988), "[a]lthough the amount of the bond is left to the discretion of the court, the posting requirement is much less discretionary. While there are exceptions, the instances in which a bond may not be required are so rare that the requirement is almost mandatory." *Id.* Such an extremely narrow exception exists "when complying with the preliminary injunction 'raises no risk of monetary loss to the defendant.'" *Hoxworth v. Blinder, Robinson & Co., Inc.*, 903 F.2d 186, 210 (3d Cir.1990) (quoting *Sys. Operations, Inc. v. Scientific Games Dev. Corp.*, 555 F.2d 1131, 1145 (3d Cir.1977)).

*Zambelli Fireworks Mfg. Co. v. Wood, Inc.*, 592 F.3d 412, 426 (3d Cir. 2010).

In its Verified Amended Complaint, Plaintiff indicates that Defendant, at the time of her resignation, earned an annual base salary of $125,000 with a bonus eligibility target of 10%. (Docket No. 6, ¶ 30). In its Proposed Conclusions of Law, Plaintiff proposes a finding that Plaintiff be required to post an injunction bond in the amount of $150,000. (Docket No. 26 at 13, ¶ 24). Exercising its discretion in setting the amount of a bond, the Court finds the proposed bond amount to be more than adequate to compensate Defendant in the event she suffers damages if this TRO is wrongfully entered. *See* Fed. R. Civ. P. 65(c); *see, e.g., Scanvec Amiable Ltd. v. Chang*, No. Civ.A. 02-6950, 2002 WL 32341772, at *3-4 (E.D. Pa. Nov. 1, 2002) (noting that, in commercial actions, district courts should err on the high side, and ordering a bond in the amount of $390,000

to maintain a preliminary injunction); *Church of Universal Love & Music v. Fayette Cnty.*, Civ. Action No. 06-872, 2009 WL 2612313, at *1 (W.D. Pa. Aug. 24, 2009) (in connection with a preliminary injunction, requiring a nominal bond in the amount of $10,000 from a municipal entity defendant, and noting the lack of documentary evidence supplied by the plaintiff); *N. Pa. Legal Servs., Inc. v. Cnty. of Lackawanna*, 513 F. Supp. 678, 685-86 (M.D. Pa. 1981) (requiring a nominal bond of $100 where there was no evidence that imposition of the preliminary injunction, which continued the status quo, would cause expenses); *Brookins v. Bonnell*, 362 F. Supp. 379, 384 (E.D. Pa. 1973) (ordering that no bond be posted where the plaintiff was indigent and no harm would result to the defendants if the order was later vacated or determined to have been improvidently entered).

Based on the foregoing, pursuant to Federal Rule of Civil Procedure 65(c), the Court finds that $150,000 is an appropriate amount to set as bond in this case, and the Court shall require that Plaintiff post same forthwith.

## IV.  **CONCLUSION**

The Court is satisfied that Defendant will not be harmed in any significant way by the granting of a TRO in this matter. Plaintiff has established all the requirements of Rule 65(b) and is entitled to entry of a TRO under the relevant case law. Additionally, the Court will grant Plaintiff's Motion for an Expedited Hearing.

An appropriate Order follows.

**ORDER OF COURT**

AND NOW, this _14_ th day of July, 2023, at _2 P.m._, upon consideration of Plaintiff's Second Motion for Temporary Restraining Order and Preliminary Injunction (Docket No. 22), for the reasons set forth in the Memorandum, *supra*, and having determined that: (1) Plaintiff has established a likelihood of success on the merits; (2) Plaintiff will suffer irreparable harm if the TRO is denied; (3) granting the TRO will not result in irreparable harm to Defendant; and (4) granting the TRO is in the public interest, IT IS HEREBY ORDERED that said Motion is GRANTED as to Plaintiff's request for a TRO only.

IT IS FURTHER ORDERED as follows:

1) Defendant shall immediately preserve all of Plaintiff's documents, information, and other property;

2) Defendant is prohibited from (i) possessing, misappropriating, using, or disclosing to any person or entity Plaintiff's Confidential Information and Trade Secrets as defined in the Verified Amended Complaint, and (ii) possessing any original, copies or summaries of Plaintiff's Confidential Information and Trade Secrets in any form, electronic or otherwise;

3) Defendant shall otherwise abide by the terms of the Offer Letter Agreement and Confidentiality/Non-Solicitation Agreement, which terms include that Defendant shall not be employed or otherwise engaged by a competing Dental Service Organization;

4) Plaintiff must post a bond forthwith in the amount of $150,000 in connection with the Court granting its Motion for a TRO;

5) Counsel for the parties shall confer and file a Joint Status Report by **July 26, 2023**, addressing whether the parties are able to resolve part or all of the request for

preliminary injunction. To the extent a full settlement is not achieved, the parties shall file a stipulation selecting an ADR process pursuant to Local Rule 16.2 by **July 26, 2023**;

6) Following the completion of any necessary expedited discovery, Plaintiff will be required to supplement their pending Motion, brief and Proposed Findings of Fact and Conclusions of Law (Docket Nos. 22, 23, 26), and in accordance with the undersigned's Practices and Procedures, Defendant will be given an opportunity to respond, and Plaintiff may file a reply. A briefing schedule will be issued by separate Order of Court; and

7) After briefing is complete, the Court will determine whether a hearing is necessary on any of the issues concerning Plaintiff's request for injunctive relief. Accordingly, a decision on Plaintiff's Motion for an Expedited Hearing (Docket No. 24) is hereby DEFERRED;

8) Plaintiff shall immediately serve Defendant with a copy of this Memorandum and Order of Court; and

9) This Order shall remain in effect until **July 28TH, 2023, at 1:59 pm**, unless otherwise extended, modified or vacated by further Order of Court.

_W. Scott Hardy_
W. Scott Hardy
United States District Judge

cc/ecf: All counsel of record