**IN THE U.S. DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| NORTH AMERICAN DENTAL MANAGEMENT, LLC, <br><br> Plaintiff, <br><br> vs. <br><br> MICHELE PHILLIPS, P1 DENTAL MSO, LLC and PRAIRIE CAPITAL, L.P. <br><br> Defendants. | **Civil Action No.: 2:23-CV-01202** |

**PRAIRIE CAPITAL, L.P. and P1 DENTAL MSO, LLC'S MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION TO DISMISS PLAINTIFF'S SECOND AMENDED COMPLAINT**

# <u>TABLE OF CONTENTS</u>

**Page**

I.      INTRODUCTION ..................................................................................................1

II.     FACTUAL BACKGROUND ..............................................................................2

III.    LEGAL STANDARD............................................................................................4

IV.     ARGUMENT ........................................................................................................5

    A.    Each of NADM's claims against Prairie Capital should be dismissed because NADM has failed to allege conduct by Prairie Capital giving rise to direct liability, or sufficient facts to support alter-ego liability................................................................................5

    B.    Each of NADM's claims is defective and should be dismissed for failure to state a claim pursuant to Rule 12(b)(6) ...........................................................................7

       1.    NADM has not adequately pleaded that P1 used, disclosed, or acquired its trade secrets under DTSA or PUTSA.................................................................8

       2.    NADM failed to adequately plead that Prairie Capital or P1 deprived NADM of the benefit of any agreement it had with Phillips, or that it suffered pecuniary loss as a result of P1's conduct .................................................................................10

       3.    NADM's claim for civil conspiracy should be dismissed because it did not adequately plead "malice" or "actual legal damage" resulting from Defendants' conduct.....................................................................................................13

       4.    NADM has not stated a claim for unfair competition because it has not pleaded that any of the alleged conduct giving rise to its claim caused a tangible impact to competition ...........................................................................................16

V.      CONCLUSION..................................................................................................18

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Accurso v. Infra-Red Services, Inc.*,
   23 F. Supp. 3d 494 (E.D. Pa. 2014) ...................................................................7

*Al Hamilon Contracting Co. v. Cowder*,
   644 A.2d 188 (Pa. Super. Ct. 1994) ...........................................................10, 11

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) .......................................................................................4

*Autotrackk, LLC v. Automotive Leasing Specialist, Inc.*,
   No. 16-1981, 2017 WL 2936730 (M.D. Pa. July 10, 2017) ...........................16, 17

*Bistrian v. Levi*,
   696 F.3d 352 (3d Cir. 2012)..............................................................................4

*Ciena Communications, Inc. v. Nachazel*,
   Case No. 09-2845, 2010 WL 3489915 (D. Colo. Aug. 31, 2010) ..........................9

*Conquest v. WMC Mortgage Corp.*,
   247 F. Supp. 3d 618 (E.D. Pa. 2017) ...............................................................5, 6

*Eagle v. Morgan*,
   Case No. 11-4303, 2011 WL 6739448 (E.D. Pa. Dec. 22, 2011) ..........................11

*Fowler v. UPMC Shadyside*,
   578 F.3d 203 (3d Cir. 2009)...............................................................................4

*Franklin Interiors, Inc. v. Wesolosky*,
   Case No. 20-1423, 2020 WL 8264115 (W.D. Pa. Oct. 21, 2020) ...........................8

*Gas Drilling Awareness Coalition v. Powers*,
   Case No. 10-1997, 2012 WL 5862471 (M.D. Pa. Nov. 19, 2012) .........................15

*Gupta v. Sears, Roebuck and Co.*,
   Case No. 07-243, 2009 WL 890585 (W.D. Pa. Mar. 26, 2009) ..........................5, 7

*Hyjurick v. Commonwealth Land Title Ins. Co.*,
   Case No. 11-1282, 2012 WL 1463633 (M.D. Pa. Apr. 27, 2012) .......................6, 7

*Liberty Mutual Ins. Co. v. Gemma*,
   301 F. Supp. 3d 523 (W.D. Pa. 2018)......................................................13, 14, 16

*Lumax Industries, Inc. v. Aultman*,
   669 A.2d 893 (Pa. 1995) ...................................................................................5

*NLMK Pennsylvania, LLC v. United States Steel Corp.*,
  Case No. 21-273, 2021 WL 3682147 (W.D. Pa. Aug. 19, 2021) ...........................................16

*Oakwood Laboratories LLC v. Thanoo*,
  999 F.3d 892 (3d Cir. 2021)...................................................................................................8

*Phillips v. Selig*,
  959 A.2d 420 (Pa. Super. Ct. 2008) ..................................................................................9, 15

*Price v. Foremost Industries, Inc.*,
  Case No. 17-145, 2018 WL 1993378 (E.D. Pa. Apr. 26, 2018) ................................................5

*Rocks v. City of Philadelphia*,
  868 F.2d 644 (3d Cir. 1989)...................................................................................................4

*Socko v. Mid-Atlantic Systems of CPA, Inc.*
  126 A.3d 1266 (Pa. 2015) ....................................................................................................12

*TECH USA, Inc. v. Milligan*,
  Case No. 20-0310, 2021 WL 795151 (D. Md. Mar. 1, 2021)....................................................9

*Travelers Indem. Co. v. Cephalon, Inc.*,
  32 F. Supp. 3d 538 (E.D. Pa. 2014) ......................................................................................5

## Statutes

Defend Trade Secrets Act, 18 U.S.C. § 1839(5).............................................................................8

Pennsylvania Uniform Trade Secrets Act, 12 Pa. C.S. § 5302(1-2)................................................8

## Other Authorities

Federal Rule of Civil Procedure 12(b)(6) ............................................................................ *passim*

Defendants Prairie Capital, L.P. ("**Prairie Capital**") and P1 Dental MSO, LLC ("**P1**"), by and through their undersigned counsel, DLA Piper LLP (US), file this Memorandum of Law in Support of their Motion to Dismiss Plaintiff's Second Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6), and in support thereof state as follows:

## I.    INTRODUCTION

This trade secret dispute arises from an apparently difficult relationship between Plaintiff North American Dental Management, LLC ("**NADM**") and its former employee, Michele Phillips ("**Phillips**").[1] NADM alleges that Phillips owed it non-competition and non-disclosure obligations, and that she breached those obligations by accepting employment with P1, downloading NADM material onto her P1 laptop, and emailing NADM material to her P1 email account. Evidently unsatisfied by its prospects for a recovery against Phillips, NADM, in its third bite at the pleading apple, now seeks to open a new front in its war on Phillips by training its legal fire on P1, and P1's corporate owner, Prairie Capital.[2]

Each of NADM's claims against Prairie Capital and P1 should be dismissed because they are legally defective. For example, NADM's Second Amended Complaint pleads no facts reflecting conduct by Prairie Capital independent of P1. Instead, NADM appears to rely on liability by association, apparently naming Prairie Capital because it is the corporate owner of P1. In the absence of any allegations that Prairie Capital, itself, engaged in any tortious conduct, or any

---

[1] This Motion to Dismiss pertains only to P1 and Prairie Capital. Phillips is represented by separate counsel and answered NADM's Second Amended Complaint.

[2] To the extent NADM makes any factual allegations regarding Prairie Capital—and it does so in only *three* of the Second Amend Complaint's 148 paragraphs, NADM engages in shotgun pleading, lumping Prairie Capital together with P1 and without alleging any specific conduct by Prairie Capital.

plausibly alleged bases for imputing liability, the claims against Prairie Capital for tortious interference, civil conspiracy, and unfair competition should be dismissed.

Even assuming that NADM adequately pleaded a basis for joining Prairie Capital to this litigation, NADM's claims against both Prairie Capital and P1 fail on their merits. For example, NADM alleges that Prairie Capital and P1 engaged in unfair competition, but NADM fails to allege if and how it competes with Prairie Capital, or any impact on whatever market space NADM allegedly shares with P1. Similarly, NADM claims that Prairie Capital and P1 tortiously interfered with its contractual relationship with Phillips, but NADM fails to plead that NADM was harmed in anyway by the alleged interference, or even that Prairie Capital or P1 did anything to deprive NADM of the benefit of those agreements. NADM's claims for the misappropriation of trade secrets and civil conspiracy are similarly legally deficient. In short, NADM asks this Court to allow the matter to proceed discovery without having alleged a plausible basis for any of its claims. The Court should decline the invitation and dismiss all claims against Prairie Capital and P1.

## II.    FACTUAL BACKGROUND

The Second Amended Complaint, as it pertains to Prairie Capital and P1's liability, consists principally of legal boilerplate and hazy allegations. To the extent there are any factual averments, it appears to be NADM's contention that P1 should be held liable because it (1) hired Phillips after reviewing agreements that NADM claims create post-employment non-competition and non-disclosure obligations for Phillips; (2) received notice of this lawsuit and the Court's temporary restraining order directed to Phillips; and, (3) subsequently terminated Phillips within one day of receiving a cease and desist letter from NADM. *See* SAC ¶¶ 73-77. Conspicuously absent from NADM's pleading are allegations that one might expect to see in serious trade secret litigation. More specifically, NADM *does not allege* any facts showing that any P1 employee (or anyone else for that matter) beyond Phillips was *even aware* that Phillips had downloaded or emailed NADM

material to herself on P1's systems, much less that any such person actually received or used the material; that Phillips (or P1) ever disseminated the information she downloaded and/or emailed to herself to other P1 employees or any third parties; or, that P1 somehow used NADM information that Phillips kept to solicit third parties, or otherwise secure a business advantage for P1.

The reason for NADM's sparse pleading is obvious: as the letter from P1 attached as Exhibit F to the Second Amended Complaint makes clear, P1 sought to protect the integrity of any NADM material that Phillips might have introduced to P1's systems.[3] *See* Ex. F to SAC at 1-2. Indeed, P1 terminated Phillips' employment *the very next day* after its receipt of NADM's cease and desist notice, effectively ending whatever inchoate threat of misappropriation Phillips may have posed. *Id.* at 1 ("Based on the issuance of the TRO in your litigation [with Phillips], P1 terminated Ms. Phillips on Monday July 24, 2023."). And, as further explained in Exhibit F, P1 immediately mobilized its IT department to identify, quarantine, and remove access to, any NADM material that Phillips might have introduced to P1's digital ecosystem.[4] *Id.* ("P1 is also in the process of having its IT department review Ms. Phillips work laptop to look for any property or information belonging to or relating to NADM.").

---

[3] NADM makes a number of allegations about the accuracy of certain representations about P1's knowledge of this litigation in the letter. *See* SAC ¶¶ 73-75. Those allegations are little more than a transparent attempt to distract from NADM's otherwise deficient pleading. It is also noteworthy that NADM does not dispute that P1 terminated Ms. Phillips the day after receiving its cease and desist letter, or undertook a review of its IT systems to identify and review material Phillips may have introduced to them.

[4] Although limited by the 12(b)(6) standard of review from introducing evidence not included in the pleadings, P1 notes that its review efforts identified a small number of emails and other documents containing information appearing to belong to NADM. P1 secured those documents, sent the documents to NADM's counsel, and offered to destroy them. Curiously, NADM refused the offer and then, several weeks later, joined Prairie Capital and P1 to this action.

On these facts, NADM brings claims against P1 for violation of the Defend Trade Secrets Act ("**DTSA**") (Count I), the Pennsylvania Uniform Trade Secrets Act ("**PUTSA**") (Count II), tortious interference with contract (Count IV), civil conspiracy (Count VI), and unfair competition (Count VII). Prairie Capital is also named in NADM's counts for tortious interference, civil conspiracy, and unfair competition. Prairie Capital and P1 now timely move to dismiss pursuant to Rule 12(b)(6) because NADM has failed to state any claim upon which relief might be granted.

## III.    LEGAL STANDARD

Prairie Capital and P1 seek relief pursuant to Federal Rule of Civil Procedure 12(b)(6), which permits dismissal if a plaintiff fails to state a claim upon which relief can be granted. "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). This standard "demands more than an unadorned, the defendant-unlawfully-harmed-me accusation." *Id.* at 678. "In other words, a complaint must do more than allege the plaintiff's entitlement to relief. A complaint has to 'show' such an entitlement with its facts." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 211 (3d Cir. 2009). When ruling on a 12(b)(6) motion, the Court must accept as true the material facts pleaded in the complaint and any reasonable inferences that may be drawn from them. *Rocks v. City of Philadelphia*, 868 F.2d 644, 645 (3d Cir. 1989). In analyzing the complaint, a court is required to first "peel away those allegations that are no more than conclusions and thus not entitled to the assumption of truth." *Bistrian v. Levi*, 696 F.3d 352, 365 (3d Cir. 2012). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557).

## IV.    ARGUMENT

NADM's claims against Prairie Capital (tortious interference, civil conspiracy, and unfair competition) and P1 (violation of DTSA and PUTSA, tortious interference, civil conspiracy, and unfair competition) should each be dismissed. As set forth at greater length below, NADM's pleading fails to allege facts that make any of its claims plausible.

### A.    Each of NADM's claims against Prairie Capital should be dismissed because NADM has failed to allege conduct by Prairie Capital giving rise to direct liability, or sufficient facts to support alter-ego liability.

NADM's claims against Prairie Capital—tortious interference (Count IV), civil conspiracy (Count VI), and unfair competition (Count VII)—should be dismissed. NADM fails to allege that Prairie Capital engaged in any conduct giving rise to these claims, and there are no allegations in the Second Amended Complaint that would support imputing P1's liability to Prairie Capital.

Under Pennsylvania law, "a parent company is not liable for the actions of its subsidiaries unless the parent company itself has engaged in wrongdoing…," *Travelers Indem. Co. v. Cephalon, Inc.*, 32 F. Supp. 3d 538, 556 (E.D. Pa. 2014), or "the parent so dominated the subsidiary that it had no separate existence," *Price v. Foremost Industries, Inc.*, Case No. 17-145, 2018 WL 1993378, at *3 (E.D. Pa. Apr. 26, 2018) (quoting *Pearson v. Component Tech. Corp.*, 247 F.3d 471, 484 (3d Cir. 2001)). *See also Conquest v. WMC Mortgage Corp.*, 247 F. Supp. 3d 618, 632 (E.D. Pa. 2017) (dismissing a complaint against a corporate parent where the plaintiff failed to allege that the parent "in its own capacity, took any action against [plaintiff]," and noting that the plaintiff's theory against the parent was "guilt by association"). Indeed, in Pennsylvania, "there is a strong presumption that a corporate parent will not be liable for the conduct of its subsidiary." *Gupta v. Sears, Roebuck and Co.*, Case No. 07-243, 2009 WL 890585, *1 (W.D. Pa. Mar. 26, 2009); *see also Lumax Industries, Inc. v. Aultman*, 669 A.2d 893, 895 (Pa. 1995) (noting Pennsylvania's "strong presumption … against piercing the corporate veil"). District courts in this

circuit applying Pennsylvania law regularly dismiss complaints against corporate parents where the only allegation to support imputing liability is the corporate parent's ownership of its subsidiary. *See Hyjurick v. Commonwealth Land Title Ins. Co.*, Case No. 11-1282, 2012 WL 1463633, at *4-5 (M.D. Pa. Apr. 27, 2012) (collecting cases for the proposition that "a plaintiff who seeks to pierce the corporate veil of a wholly owned subsidiary corporation must allege some facts beyond mere evidence of ownership"). Here, NADM's claims against Prairie Capital should be dismissed because it has failed to plead that Prairie Capital is directly liable to NADM or liable as P1's alter ego.

As to Prairie Capital's direct liability, there is no factual averment in the Second Amended Complaint that Prairie Capital, in its own right, engaged in *any* conduct directed at NADM, much less conduct sufficient to support NADM's claims for tortious interference, civil conspiracy, or unfair competition. What factual allegations there are in the Second Amended Complaint are directed to P1. *See, e.g.*, SAC ¶ 69 (noting that "*P1* directly competes with NADM" (emphasis supplied)); *Id.* ¶ 70 (noting that "NADM sent *P1* a cease and desist letter"); *Id.* ¶ 77 (noting that "*P1*" fired Phillips (emphasis supplied)); *Id.* ¶ 78 (alleging that "[w]hile working for *P1*, Phillips … used and downloaded to her *P1* computer NADM's Confidential Information and Trade Secrets and emailed NADM"s Confidential Information and Trade Secrets to her *P1* email account" (emphasis supplied)). NADM's theory of direct liability against Prairie Capital appears to be guilt by association, which is plainly insufficient. *See, Conquest*, 247 F. Supp. 3d at 632.

NADM's pleading also fails to allege facts that would justify imputing liability from P1 to Prairie Capital. To be clear, the words "alter ego," "instrumentality," or "veil piercing" do not appear *anywhere* in the Second Amended Complaint. Even if the Court were inclined to give NADM the benefit of the doubt, however, any bid to impute liability would fail. As noted above,

Pennsylvania law features a "strong presumption" against piercing the corporate veil, *Gupta*, 2009 WL 890585, *1, which is only overcome at the motion to dismiss stage where a plaintiff pleads "the quantum of facts necessary to give rise to the reasonable inference that the alter ego test could be satisfied," *Accurso v. Infra-Red Services, Inc.*, 23 F. Supp. 3d 494, 510 (E.D. Pa. 2014). Relevant considerations for veil piercing include the intermingling of funds, undercapitalization of the subsidiary, failure to adhere to corporate formalities, or the use of the corporate form to perpetrate a fraud. *Gupta*, 2009 WL 890585, *2. Here, NADM has not pleaded a single fact relative to the alter ego inquiry, other than Prairie Capital's ownership of P1, which is clearly insufficient to pierce the veil. *See Hyjurick*, 2012 WL 1463633, at *4-5. For this reason, NADM has failed to raise a reasonable inference that the veil could be pierced from P1 to Prairie Capital, and NADM's claims for tortious interference, civil conspiracy, and unfair competition against Prairie Capital should, therefore, be dismissed.

In sum, NADM's claims against Prairie Capital should be dismissed. NADM has failed to allege that Prairie Capital engaged in any misconduct that would expose it to liability directly, or that there exist any facts that would warrant piercing the veil between Prairie Capital and P1. Accordingly, NADM's claims for tortious interference (Count IV), civil conspiracy (Count VI), and unfair competition (Count VII) should be dismissed as to Prairie Capital.

**B.      Each of NADM's claims is defective and should be dismissed for failure to state a claim pursuant to Rule 12(b)(6).**

Notwithstanding NADM's failure to plead facts sufficient to support its claims against Prairie Capital by virtue of its relationship with P1, each of NADM's claims—violation of DTSA and PUTSA (Counts I and II, brought against P1 and not Prairie Capital), tortious interference (Count IV), civil conspiracy (Count VI), and unfair competition (Count VII)—is defective on its face and should be dismissed pursuant to Rule 12(b)(6).

1.    **NADM has not adequately pleaded that P1 used, disclosed, or acquired its trade secrets under DTSA or PUTSA.[5]**

In Counts I and II, NADM brings claims against P1 for violation of the DTSA and PUTSA. Both claims should be dismissed because NADM did not adequately allege that P1 "misappropriated" NADM's trade secrets.

DTSA and PUTSA are different statutes but create materially identical causes of action for the "misappropriation" of trade secrets. Each statute defines "misappropriation" as including the "acquisition" by improper means or "disclosure or use" of a trade secret. *See* 18 U.S.C. § 1839(5)(A, B); 12 Pa. C.S. § 5302(1-2). In order to state a claim under either, the law requires a plaintiff to allege facts showing more than a defendant's simple possession of trade secrets; rather, there must be plausible allegations that the defendant engaged in some kind of active conduct prohibited by the statute. *See, e.g.*, *Oakwood Laboratories LLC v. Thanoo*, 999 F.3d 892, 910 (3d Cir. 2021) (noting that a defendant "use[s]" a trade secret when they "take advantage of trade secret information to obtain an economic benefit, competitive advantage, or other commercial value, or to accomplish a similar exploitative purpose"); *see also, e.g.*, *Franklin Interiors, Inc. v. Wesolosky*, Case No. 20-1423, 2020 WL 8264115, at *5 (W.D. Pa. Oct. 21, 2020) (finding that a plaintiff adequately alleged trade secret misappropriation where, *inter alia*, the defendant was "disclosing or sharing" trade secrets and its "use, current possession of, and refusal to return" trade secrets was done without the plaintiff's authorization to permission). Threadbare allegations that a former employee and her new employer "have misappropriated, or threaten to misappropriate, [the former employer's] trade secrets for the purpose of using and exploiting such

---

[5] NADM does not assert its DTSA and PUTSA claims against Prairie Capital, and so this argument is limited to P1.

information" are insufficient to state a claim. *Ciena Communications, Inc. v. Nachazel*, Case No. 09-2845, 2010 WL 3489915, at *4 (D. Colo. Aug. 31, 2010).

Here, NADM's Second Amended Complaint fails to state a claim because it does not allege any facts suggesting that P1 used, disclosed, or acquired NADM's trade secret material. The sum total of NADM's allegations are that P1 purportedly hired Phillips, and that *Phillips* downloaded NADM material to her P1 laptop and emailed NADM material to *herself* using her P1 email account. *See* SAC ¶ 78 ("While working for P1, *Phillips* admittedly used and downloaded to her P1 computer NADM's confidential Information and Trade Secrets and emailed NADM's Confidential Information and Trade secrets to her P1 email account." (emphasis supplied)). There is simply no allegation that *P1*, by contrast, did *anything* that might reasonably be characterized as the acquisition, use, or disclosure of NADM's trade secret material. Indeed, as *NADM itself acknowledges*, P1 terminated Phillips' employment *within a day of receiving NADM's cease and desist letter* and immediately deployed its IT department to search for, identify, and make inaccessible any NADM material that Phillips may have brought to P1. *See* Ex. F to SAC (noting that "P1 does not have and has never had any intent to misappropriate [NADM's] trade secrets or otherwise use any proprietary information or property that Ms. Phillips allegedly took and retained from NADM" and that "based on the issuance of the TRO in [NADM's litigation with Phillips], P1 terminated Ms. Phillips on Monday, July 24, 2023"). Accordingly, NADM has not—and indeed, cannot—state a claim for relief under either the DTSA or PUTSA. *See TECH USA, Inc. v. Milligan*, Case No. 20-0310, 2021 WL 795151, at *5 (D. Md. Mar. 1, 2021) (noting that "the mere ability to access a trade secret is not sufficient to constitute misappropriation under the DTSA"); *Nachazel*, 2010 WL 3489915, at *4 (dismissing a misappropriation claim against a former employee's new employer where the former employer "does not explain what specific facts that

have led [the former employer] to the conclusion that [the new employer] has misappropriated or threatens to misappropriate the trade secrets" such as the new employer contacting customer contacts of the former employer or creating product literature comparing the former and new employer's products in ways known only to the former employer).

Because NADM has failed to adequately allege that P1 engaged in any conduct prohibited by the DTSA or PUTSA, *i.e.*, the misappropriation of NADM's trade secrets by impermissibly acquiring them, using them, or disclosing them, NADM has failed state a claim under either. For that reason, Counts I and II of the Second Amended Complaint should be dismissed as to P1.

      **2.**    **NADM failed to adequately plead that Prairie Capital or P1 deprived NADM of the benefit of any agreement it had with Phillips, or that it suffered pecuniary loss as a result of P1's conduct.**

In Count IV, NADM alleges that Prairie Capital and P1 tortiously interfered with its contractual relationship with Phillips. Whether NADM's claim is based on Phillips' violation of her alleged non-competition obligations, or her alleged disclosure of NADM confidential information (NADM leaves Prairie Capital, P1, and the Court to guess), NADM's claim is deficient and should be dismissed.

In order to state a claim under Pennsylvania law for tortious interference, a plaintiff must allege facts sufficient to plausibly show: "(1) there was an existing contractual relationship between the plaintiff and a third party; (2) the defendant interfered with the performance of that contract by inducing a breach or otherwise causing the third party not to perform; (3) the defendant was not privileged to act in this manner; and (4) the plaintiff suffered pecuniary loss as a result of the breach of contract." *See Al Hamilon Contracting Co. v. Cowder*, 644 A.2d 188, 191 (Pa. Super. Ct. 1994). A cause of action for this claim "will not stand unless there has been some act by the defendant which served to deprive the plaintiff of some benefit to which he was entitled by contract." *Id.* (citing *Keifer v. Cramer*, 51 A.2d 695, 695 (Pa. 1947)). "The gravamen of this tort

is the lost pecuniary benefits following from the lost contract." *Id.* (quoting *Pelagatti v. Cohen*, 536 A.2d 1337, 1343 (Pa. Super. Ct. 1987)).

NADM's claim for tortious interference should be dismissed because it has failed to allege facts that plausibly show it suffered pecuniary loss because of P1 or Prairie Capital's alleged conduct. Conspicuously absent from the Second Amended Complaint is *any* allegation that Phillips—or anyone else, for that matter—disclosed or used NADM information to solicit NADM clients, customers, or employees on behalf of P1 or Prairie Capital, much less that any such solicitations were successful in luring business away from NADM to P1 or Prairie Capital (or to any other third party) or otherwise caused NADM to suffer any damages. Here, as elsewhere, NADM relies on threadbare recitals of damages, *see* SAC ¶ 129 (noting the alleged interference "caused and … will continue to cause NADM to suffer irreparable harm and damages"), which are legal conclusions this Court should disregard and insufficient to support NADM's claim. *See Eagle v. Morgan*, Case No. 11-4303, 2011 WL 6739448, at *15 (E.D. Pa. Dec. 22, 2011) (dismissing a tortious interference claim where plaintiff's sole allegation of damages was that as "a direct and proximate result of [defendant's] tortious conduct described above, [plaintiff] has suffered and/or will suffer actual and/or consequential damages … and is entitled to damages in amount to be determined at trial").  In the absence of specific allegations of pecuniary loss, NADM's claim should be dismissed.

Additionally, NADM has not stated a claim for tortious interference because it has failed to allege any act by *P1* or *Prairie Capital* that would have deprived NADM of any benefit it expected from its contractual relationship with Phillips. This is the case whether that benefit is characterized as Phillips' agreement not to compete, or her agreement not to disclose confidential information belonging to NADM. To the extent that the basis for NADM's claim is that P1 or

-11-

Prairie Capital deprived it of the benefit of Phillips' agreement not to compete, NADM's claim must fail because the restrictive covenants that NADM claims create those obligations are not enforceable under Pennsylvania law. In Pennsylvania, a restrictive covenant may only extend to a geographically reasonable scope. *See Socko v. Mid-Atlantic Systems of CPA, Inc.* 126 A.3d 1266, 1274 (Pa. 2015) (noting the conditions under which a Pennsylvania court will enforce a restrictive covenant, including that it is "reasonably limited in duration and geographic extent"). None of the agreements at issue here, however, identifies *any* geographic limitation, much less any limitation that is plausibly alleged to be "reasonable." Those agreements are, therefore, unenforceable.[6] And so, it was NADM's poor drafting—and not any act by P1 or Prairie Capital—that deprived NADM of the benefit of the restrictive covenants it thought it received from Phillips.

NADM similarly fails to allege any act by P1 that would have deprived NADM of any non-confidentiality agreement it might have had with Phillips. The crux of NADM's claim appears to be that Phillips violated her non-disclosure agreement by downloading NADM information to her P1 computer and sending NADM information to her P1 email account. In other words, it is evidently NADM's position that P1—and the Second Amended Complaint says nothing about Prairie Capital at all—deprived NADM of the benefit of its non-disclosure agreement with Phillips by providing Phillips, then an employee of P1, with a P1 computer, access to the internet, and/or a P1 email account. P1 is unaware of any decision from any court applying Pennsylvania law that

---

[6] The Second Amended Complaint falls far short of the level of detail needed to support any rebuttal by NADM. At best, NADM alleges that Phillips was a senior NADM executive, and that NADM operates in 15 states. *See* SAC ¶¶ 12, 47. NADM does not identify the fifteen states where it operates (and by negative implication the 70% of states in which it does *not* operate), or what contacts Phillips might have had with those states and others in which NADM sought to expand. In short, even taking what few factual averments NADM deigns to plead in its Second Amended Complaint as true, it is insufficient to establish the reasonableness of its apparently 50-state non-competition agreement.

has so expansively interpreted this aspect of a tortious interference claim. Simply providing Phillips with the tools necessary to perform the job for which P1 employed her (for a very limited time) does not and cannot amount to tortious interference with Phillips' confidentiality obligations. Her conduct in this regard was hers and hers alone—indeed, there is no allegation that P1 did anything—at all—to encourage, facilitate, or otherwise induce Phillips to email herself NADM material or download material to her P1 laptop. Thus, NADM fails to allege that P1 did *anything* to deprive NADM of the benefit of its confidentiality agreement with Phillips, and for that reason, NADM's claim should be dismissed.

### 3. NADM's claim for civil conspiracy should be dismissed because it did not adequately plead "malice" or "actual legal damage" resulting from Defendants' conduct.

To state a claim under Pennsylvania law for civil conspiracy, a plaintiff must allege facts sufficient to show: "(1) a combination of two or more persons acting with a common purpose to do an unlawful act or to do a lawful act by unlawful means or for an unlawful purposes; (2) an overt act done in pursuance of the common purpose; and, (3) actual legal damage." *Liberty Mutual Ins. Co. v. Gemma*, 301 F. Supp. 3d 523, 544-45 (W.D. Pa. 2018) (quoting *Depuy Synthes Sales, Inc. v. Globus Med., Inc.*, 259 F. Supp. 3d 225, 247-48 (E.D. Pa. 2017)). In addition, "proof of malice, *i.e.*, an intent to injure, is essential in proof of a conspiracy." *Id.* (quoting *Thompson Coaql Co. v. Pike Coal Co.*, 412 A.2d 466, 472 (Pa. 1979)). "[A] showing that a person acted for professional reasons, and not solely to injury the plaintiff, negates a finding of malice." *Id.* NADM's civil conspiracy claim is legally defective and should be dismissed for three reasons.

*First*, NADM fails to adequately allege that Prairie Capital or P1 acted with "malice." NADM does plead that Prairie Capital, P1, and Phillips "conspired … with the specific intent to injure NADM's business." SAC ¶ 140. But such a legally conclusory allegation is insufficient to

survive a motion under Rule 12(b)(6), and NADM otherwise fails to allege any *facts* that, if proven, would suggest that Prairie Capital or P1 intended to injure NADM's business. At best, NADM avers that it and P1 are competitors, and that P1 hired away NADM's valued employee. *See* SAC ¶ 69. These allegations are insufficient for NADM to state a claim. For one, the averment that P1 and NADM are competitors says nothing about *Prairie Capital's* intent, and so the claim should be dismissed at least as to that defendant. But even if the allegation of competition between P1 and NADM were relevant to liability against Prairie Capital, such an allegation does not suffice to show the "malice" required by Pennsylvania law for either Prairie Capital or P1.

As this Court has held previously, the averment of a conspiracy to compete negates the requisite showing of malice because it shows a motivation other than to solely injure the plaintiff, and therefore renders a civil conspiracy legally claim defective. *See Gemma*, 301 F. Supp. 3d at 545 (granting a motion to dismiss a claim for civil conspiracy for failure to adequately plead malice where the allegations "center[ed] around Defendants acting together for the purpose of setting up an insurance business to compete with [plaintiff]"). Yet, NADM specifically avers that it competes with P1, *see* SAC ¶ 69, and that the object of the alleged conspiracy between P1, Prairie Capital, and Phillips was to "commit illegal acts *designed to unfairly compete with NADM*." SAC ¶ 138 (emphasis supplied). Even assuming the truth of this allegation, the object of the alleged conspiracy was to compete. Thus, the conspiracy claim fails to allege any act taken with malice and must be dismissed.

**Second**, NADM's claim is also defective because it has not adequately pleaded damages. As noted above, Pennsylvania law requires NADM to plead damage resulting from the supposed civil conspiracy. *See Kramer v. Stewart*, Cas No. 05-0704, 2005 WL 1661076, at *2 (M.D. Pa. July 14, 2005) (dismissing a civil conspiracy claim where plaintiff failed to plead "what, if any,

damage resulted from the alleged conspiracy"). Here, as elsewhere, the Second Amended Complaint contains only legal boilerplate. Indeed, NADM fails to allege any facts suggesting that it was damaged by the alleged conspiracy. And how could it? As even NADM admits, and the attachments to the Second Amended Complaint make clear, P1 acted to protect whatever NADM property Phillips might have imported into P1's systems by firing Phillips within *one day* of receiving NADM's cease and desist letter and reviewing its digital ecosystem to identify and remove access to any NADM material. Under these circumstances, and based on the paucity of factual averments in the Second Amended Complaint, NADM has failed to plausibly allege damages sufficient to support a claim for civil conspiracy under Pennsylvania law.

*Third* and finally, to the extent that the Court dismisses NADM's substantive claims against Prairie Capital and P1—*i.e.*, NADM's claims for violation of DTSA and PUTSA (Counts I and II, which name P1, but not Prairie Capital), tortious interference (Count IV), and unfair competition (Count VII, discussed below), the Court must also dismiss NADM's claim for civil conspiracy. This is the case because, in Pennsylvania, "absent a civil cause of action for a particular act, there can be no cause of action for civil conspiracy to commit that act." *Phillips v. Selig*, 959 A.2d 420, 437 (Pa. Super. Ct. 2008); *see also, e.g.*, *Gas Drilling Awareness Coalition v. Powers*, Case No. 10-1997, 2012 WL 5862471, at *5 (M.D. Pa. Nov. 19, 2012) (dismissing a claim for civil conspiracy because the claim for the tort that was the object of the conspiracy was inadequately pleaded). If the Court dismisses NADM's other substantive claims, it will have dismissed the torts that form the alleged acts of the conspiracy, and in their absence, neither Prairie Capital nor P1 could be said to have engaged in a conspiracy under Pennsylvania law. Therefore, in the event the Court dismisses Counts I, II, IV, and VII as to Prairie Capital and P1, it must also dismiss NADM's claim for civil conspiracy in Count VI.

Considering the foregoing, NADM's claim for civil conspiracy against Prairie Capital and P1 should be dismissed. NADM has failed to adequately plead that either entity acted with malice, (*i.e.*, for the sole purpose of harming NADM), or that NADM suffered any legal damages resulting from the alleged conspiracy. Its claim is, therefore, defective and should be dismissed.

>        4.        **NADM has not stated a claim for unfair competition because it has not pleaded that any of the alleged conduct giving rise to its claim caused a tangible impact to competition.**

In Count VII, NADM brings a claim against Prairie Capital and P1 for common law unfair competition. Common law unfair competition, although ill-defined under Pennsylvania law and still "in a state of development," *NLMK Pennsylvania, LLC v. United States Steel Corp.*, Case No. 21-273, 2021 WL 3682147, at *9 (W.D. Pa. Aug. 19, 2021), most commonly arises where a plaintiff alleges that the defendant, its rival, has sought to "pass off" the plaintiff's wares as if they were the defendant's own. Unfair competition is not "a virtual catch-all for any form of wrongful business conduct." *Gemma*, 301 F. Supp. 3d at 545. Federal courts attempting to mark the contours of the claim, including this one and others, have found that claims for unfair competition must allege facts sufficient to support the plausible existence of a "specific market impact" resulting from the alleged misconduct. *Gemma*, 301 F. Supp. 3d at 545; *see also Autotrackk, LLC v. Automotive Leasing Specialist, Inc.*, No. 16-1981, 2017 WL 2936730, at *12-15 (M.D. Pa. July 10, 2017) (engaging in an extended analysis of the unfair competition jurisprudence in Pennsylvania, and concluding that "it is difficult to fathom the imposition of liability for alleged unfair competition where it cannot be discerned from the complaint that the offending company mobilized misappropriated information in a way that had a tangible market impact").

Here, NADM's claim against both Prairie Capital and P1 for unfair competition should be dismissed for want of the requisite market impact. As noted above, NADM does not allege any action by Prairie Capital at all, much less any that could be appropriately characterized as unfair

competition resulting in a "specific market impact." Indeed, NADM does not even allege that NADM and Prairie Capital compete in the same marketplace. In light these gaping holes, Count VII should be dismissed as to Prairie Capital.

NADM's unfair competition claim against P1 also fails. At most, NADM baldly alleges that P1 and NADM compete in the marketplace. *See* SAC ¶¶ 68-69. As noted above, a claim for unfair competition requires some allegation of an impact on the marketplace in which the plaintiff and defendant compete resulting from the defendant's alleged misconduct. *See Autotrackk, LLC*, 2017 WL 2936730, at *12. NADM's Second Amended Complaint falls woefully short of pleading facts sufficient to plausibly establish a marketplace impact, for two reasons.

***First***, NADM makes only the most threadbare of allegations of competition. It pleads nothing about the geographic locations in which the two supposedly compete, the market segments in which they operate, or the overlapping services they might provide—only that the two are "competitors." *See* SAC ¶¶ 68-69

***Second***, NADM fails to allege that P1's alleged conduct resulted in "a tangible market impact." It bears repeating here that the Second Amended Complaint contains *no allegation* that the materials Phillips brought with her to P1 were used by P1 *in any way, whatsoever, to do anything*. As Exhibit F makes clear, P1 terminated Phillips within a single day of receiving NADM's cease and desist, searched for and quarantined data it thought might belong to NADM, and otherwise offered its full cooperation in protecting NADM's material. Under these circumstances, it is simply not plausibly alleged in the Second Amended Complaint that P1 engaged in common law unfair competition.

In conclusion, NADM's claim for unfair competition against Prairie Capital and P1 should be dismissed. Neither defendant is adequately alleged to have engaged in an unfair business

practice that resulted in a tangible impact on any market in which they compete with NADM. NADM's claim is, therefore, deficient and should be dismissed pursuant to Rule 12(b)(6).

## V.    CONCLUSION

Defendants Prairie Capital, L.P. and P1 Dental MSO, LLC, respectfully request that this Court grant their Motion to Dismiss and to dismiss each of NADM's claims against them. For the reasons set forth in detail above, NADM has failed to state its claims for trade secret misappropriation under the DTSA and PUTSA (Counts I and II), tortious interference with contract (Count IV), civil conspiracy (Count VI), and unfair competition (Count VII). Accordingly, NADM's Second Amended Complaint should be dismissed in its entirety as it pertains to Prairie Capital and P1.

**Respectfully submitted,**

DATED: December 11, 2023          **DLA PIPER LLP (US)**

_/s/ James C. Bookhout_
James C. Bookhout (*Pro Hac Vice*)
Brett M. Feldman (*Pro Hac Vice*)
Timothy Gilbert (PA 327957)
james.bookhout@us.dlapiper.com
brett.feldman@us.dlapiper.com
timothy.gilbert@us.dlapiper.com
1650 Market Street, Suite 5000
Philadelphia, PA 19103
T: (215) 656-3300
F: (214) 656-3301

*Attorneys for Defendants P1 Dental MSO, LLC and Prairie Capital, L.P*