IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| NORTH AMERICAN DENTAL, MANAGEMENT, INC. | ) ) ) |
| Plaintiff, | ) ) |
| v. | ) Civil Action No. 23-1202 ) |
| MICHELE PHILLIPS; P1 DENTAL MSO, LLC and PRAIRIE CAPITAL, L.P., | ) ) ) |
| Defendants. | ) ) |

**MEMORANDUM OPINION**

This case involves alleged trade secrets. Defendant Michele Phillips ("Phillips") was formerly employed by Plaintiff North American Dental Management, Inc. ("NADM") as its Manager of Doctor Recruiting. In May 2023, Phillips informed NADM that she was leaving NADM to work at a competing Dental Services Organization ("DSO"), whose identify she refused to disclose. NADM filed the initial complaint in this case to enforce the restrictive covenants in Phillips' employment contract barring disclosure of confidential information and trade secrets.

After discovering that Phillips downloaded proprietary information, NADM filed an amended complaint. On July 14, 2023, this Court entered a temporary restraining order (TRO) in favor of NADM (Docket No. 29). NADM learned that Phillips' new employer was P1 Dental MSO, LLC ("P1"). On July 23, 2023, counsel for NADM sent a cease and desist letter to P1 (Docket No. 44-5). Counsel for P1 responded on July 25, 2023 (Docket No. 44-6).

On September 29, 2023, NADM filed a second amended complaint ("SAC") (Docket No. 44), which named P1 and Prairie Capital, L.P. ("Prairie") as defendants. The SAC identifies Prairie

only as a limited partnership headquartered in Chicago, IL. SAC ¶ 28. From the briefing, it appears undisputed that Prairie is the corporate parent of P1.

Presently before the Court is a Motion to Dismiss filed on behalf of P1 and Prairie (Docket No. 54). Phillips filed an Answer and therefore, this case will proceed (Docket No. 46). The motion is thoroughly briefed (Docket Nos. 55, 56, 57) and is ripe for decision. For the reasons set forth herein, the motion will be granted in part, with respect to the claims against Prairie, and will be denied in all other respects.

I.     BACKGROUND

As the parties are well-acquainted with the factual background of this case, at this juncture the Court will present an abbreviated version of the facts, as alleged in the SAC and in the light most favorable to Plaintiff, that are relevant to the motion presently before the Court.

NADM alleges that despite receiving a copy of the TRO on July 14, 2023 by email "and advising both Prairie and P1, Phillips continued working for PI in violation of the TRO." SAC ¶ 6. It was only after receiving the July 23, 2023, cease and desist letter from NADM's counsel to P1 (Docket No. 44-5) that P1 terminated Phillips on July 24, 2023. SAC ¶ 7.

NADM alleges that the statements in P1's response (Docket No. 44-6) that it had no prior knowledge of the lawsuit or TRO were false. SAC ¶ 7. NADM avers that "both Prairie and P1" had full knowledge of Phillips' restrictive covenants at the time of her hiring and hired her anyway. SAC ¶ 8. NADM also avers that Phillips notified Prairie and P1 of the cease and desist letters and TRO, but notwithstanding, P1 continued to employ Phillips. SAC ¶ 8. Phillips testified[1] that,

---

[1] Phillips was deposed earlier in this case. *See* Docket No. 57 at 4. The transcript of this testimony was not provided to the Court.

2

absent further order of this Court, she intends to return to P1 to build a recruiting platform for P1 modeled after the proprietary NADM platform. SAC ¶ 10.

NADM asserts that this case involves Phillips' theft of NADM's valuable competitive database for the benefit of herself and her new employer, P1. SAC ¶ 14. Given Phillips' role as a highly-compensated recruiting executive, she cannot perform a recruiting role for a competing DSO without inevitably calling upon NADM's trade secrets. SAC ¶ 17. In the days prior to informing NADM of her resignation, Phillips downloaded over 400 proprietary recruiting files and documents onto a removable storage device, which she did not return upon her separation. SAC ¶ 19.

NADM pleads that Phillips was employed by P1. SAC ¶¶ 20, 22, 68. The cease and desist letter (Docket No. 44-5) was sent only to P1, not Prairie. While working for P1, Phillips "used and downloaded to her P1 computer" NADM's Confidential Information and Trade Secrets and emailed NADM's that information to "her P1 email account." SAC ¶ 78.

There are no non-conclusory allegations in the SAC about the conduct of Prairie. NADM broadly alleges that "P1 and Prairie" analyzed Phillips' restrictions, hired her to work at P1, and were advised of the TRO. SAC ¶¶ 73, 74. There are no specific allegations, however, about Prairie's conduct. NADM argues (*see* Docket No. 56 at 1) that Phillips admitted critical allegations against Prairie and P1 in her Answer. Upon review of the Answer (Docket No. 46), the Court can discern no specific facts about Prairie.

The SAC asserts the following claims: (Count 1) (against Phillips and P1 only) Defend Trade Secrets Act ("DTSA"); (Count 2) (against Phillips and P1 only) Pennsylvania Uniform Trade Secrets Act ("PUTSA"); (Count 3) (against Phillips only) breach of contract; (Count 4) (against Prairie and P1) tortious interference with contract; (Count 5) (against Phillips only) breach

of fiduciary duty; (Count 6) (all defendants) civil conspiracy; and (Count 7) (all defendants) unfair competition.

## II.  STANDARD OF REVIEW

In considering a Rule 12(b)(6) motion to dismiss, the factual allegations contained in the complaint must be accepted as true and must be construed in the light most favorable to the plaintiff, and the Court must "'determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief.'" *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 231 (3d Cir. 2008) (quoting *Pinker v. Roche Holdings Ltd.*, 292 F.3d 361, 374 n.7 (3d Cir. 2002)); *see Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 563 n.8 (2007).  While Federal Rule of Civil Procedure 8(a)(2) requires only "'a short and plain statement of the claim showing that the pleader is entitled to relief,'" the complaint must "'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Phillips*, 515 F.3d at 231 (quoting *Twombly*, 550 U.S. at 555).  Moreover, while this standard "does not require 'detailed factual allegations,'" Rule 8 "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 555).

To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Twombly*, 550 U.S. at 570).  The Supreme Court has noted that a "claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556).  The standard "'does not impose a probability requirement at the pleading stage,' but instead 'simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of' the

4

necessary element." *Phillips*, 515 F.3d at 234 (quoting *Twombly*, 550 U.S. at 556). Moreover, the requirement that a court accept as true all factual allegations does not extend to legal conclusions; thus, a court is "'not bound to accept as true a legal conclusion couched as a factual allegation.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555).

To review a complaint under this standard, the Court proceeds in three steps. *See Connelly v. Lane Const. Corp.*, 809 F.3d 780, 787 (3d Cir. 2016). First, the Court notes the elements of a claim. *See Id.* (quoting *Iqbal*, 556 U.S. at 675). Second, the Court eliminates conclusory allegations. *See Id.* (quoting *Iqbal*, 556 U.S. at 679). Finally, the Court assumes the well-pleaded facts that are left are true and assesses "'whether they plausibly give rise to an entitlement to relief.'" *Id.* (quoting *Iqbal*, 556 U.S. at 679). Also, in reviewing a motion to dismiss, "a court may, in addition to the contents of the complaint, consider any attached exhibits and evidence beyond the complaint including public records . . . , documents essential to [plaintiff's] claim which are attached to defendant's motion, and items appearing in the record of the case." *Smith v. Lincoln Ben. Life Co.*, Civ. Action No. 08-01324, 2009 WL 789900, at *5 (W.D. Pa. Mar. 23, 2009) (internal citation and quotation marks omitted), *aff'd*, 395 F. App'x 821 (3d Cir. 2010).

Additionally, in the courts' consideration of whether claims – if they are to be dismissed – will be dismissed with prejudice, Federal Rule of Civil Procedure 15(a)(2) directs that leave to amend should be freely given "when justice so requires." Denial of leave to amend may be appropriate where there is "'undue delay, bad faith, dilatory motive, prejudice, and futility.'" *Shane v. Fauver*, 213 F.3d 113, 115 (3d Cir. 2000) (quoting *In re Burlington Coat Factory Secs. Litig.*, 114 F.3d 1410, 1434 (3d Cir. 1997)).

### III. DISCUSSION

#### A. Claims against Prairie

NADM disavows that it is pursuing an alter ego theory. Instead, NADM argues that it alleged facts sufficient to hold Prairie liable independent of P1. (Docket No. 56 at 6). The Court cannot agree.

The SAC does not contain any actual facts about Prairie's involvement. At most, NADM alleges that Phillips "advised both P1 and Prairie" of her restrictive covenants with NADM. There are no averments to distinguish the involvement of Prairie from that of P1 (i.e., who, what, when, how). Prairie's relationship to P1 and NADM is not evident from the SAC. What is clear from the SAC is that P1 (not Prairie) is a competitor of NADM; Phillips was employed only by P1; NADM's July 23, 2023 cease and desist letter was sent only to P1; and the alleged misrepresentations in the response letter came only from P1. SAC ¶¶ 68-74. P1 continued to employ Phillips. SAC ¶ 76. There are simply no facts pleaded in the SAC about what Prairie did or failed to do. Accordingly, all claims against Prairie will be dismissed. To the extent that NADM is able to plead sufficient facts to make a claim against Prairie plausible, it may seek leave to amend its complaint.

#### B. Claims against P1

##### i. DTSA/PUTSA

In Counts 1 and 2, NADM asserts claims for misappropriation of its trade secrets against P1. Claims under the DTSA and the PUTSA require the same elements and will be analyzed together. *Paragon Eng'g Servs., Inc. v. Providence Eng'g Corp.*, No. 1:24-CV-312, 2024 WL 5046719, at *7 (M.D. Pa. Dec. 9, 2024). The elements of trade secret misappropriation are as follows: "(1) the existence of a trade secret, defined generally as information with independent

economic value that the owner has taken reasonable measures to keep secret; (2) that is related to a product or service used in, or intended for use in, interstate or foreign commerce; and (3) the misappropriation of that trade secret, defined broadly as the knowing improper acquisition, or use or disclosure of the secret[.]" *Oakwood Lab'ys LLC v. Thanoo*, 999 F.3d 892, 905 (3d Cir. 2021) (cleaned up).

P1 argues that NADM failed to plead "misappropriation." In *Thanoo*, the Third Circuit reversed a district court's dismissal of a DTSA claim. With respect to misappropriation, the Court explained that "[t]here are three ways to establish misappropriation under the DTSA: improper acquisition, disclosure, or use of a trade secret without consent. 18 U.S.C. § 1839(5)." *Id.* at 907-08. The Court instructed:

> When interpreted specifically in the context of trade secret misappropriation, the term "use" has been broadly defined as
>
>> any exploitation of the trade secret that is likely to result in injury to the trade secret owner or enrichment to the defendant[.] ... Thus, marketing goods that embody the trade secret, employing the trade secret in manufacturing or production, relying on the trade secret to assist or accelerate research or development, or soliciting customers through the use of information that is a trade secret ... all constitute 'use.' "

Id. at 909 (citation omitted). The Court emphasized that "use" must be given a broad interpretation, especially at the pleading stage, and an inference of improper use can flow from circumstantial evidence alone. *Id.* at 910.

In its reply, P1 argues that even if Phillips misappropriated NADM's trade secrets, P1 cannot be held vicariously liable for her conduct. In *Advanced Fluid Sys., Inc. v. Huber*, 295 F. Supp. 3d 467, 486 (M.D. Pa. 2018), the court recognized that "[u]nder Pennsylvania law, an employer may be vicariously liable for its employee's intentional acts if the conduct (1) is similar in kind to that which the employee is hired to perform, (2) occurs "substantially within" the

7

temporal and spatial scope of employment, and (3) is "actuated," at least in part, in service of the employer."

In this case, it must be taken as true (at this stage) that Phillips, while working at P1, took NADM's trade secrets and put them on a P1 computer and emailed them to her P1 email. SAC ¶ 78. NADM alleges that P1, despite knowing about Phillips' duty to not disclose trade secrets, hired her to create a competing recruiting platform based on those trade secrets. SAC ¶¶ 8, 73. NADM alleges that P1 continued to employ Phillips for ten days after being notified of the TRO, SAC ¶ 76, and that Phillips intends to return to P1, absent a court order, to continue building a competing platform. SAC ¶ 10. These allegations, and the reasonable inferences that can be drawn from them, suffice to make out a plausible claim that P1's conduct falls within the broad definition of "use." The motion to dismiss the DTSA and PUTSA claims will be denied.

### ii. Tortious Interference

In Count 4, NADM asserts a claim against P1[2] for tortious interference with contract. "Under Pennsylvania law, to prevail on a claim for tortious interference with existing or prospective contractual relationships, a party must prove: (1) the existence of a contractual or prospective contractual or economic relationship between the plaintiff and a third party; (2) purposeful action by the defendant, specifically intended to harm an existing relationship or intended to prevent a prospective relation from occurring; (3) the absence of privilege or justification on the part of the defendant; (4) legal damage to the plaintiff as a result of the defendant's conduct; and (5) for prospective contracts, a reasonable likelihood that the relationship would have occurred but for the defendant's interference." *Acumed LLC v. Advanced Surgical Servs., Inc.*, 561 F.3d 199, 212 (3d Cir. 2009) (citation omitted).

---

[2] All claims against Prairie will be dismissed for the reasons set forth above.

P1 argues that NADM failed to adequately allege damages or pecuniary loss. (Docket No. 55 at 15). P1 points out that there is no allegation that it used the information to solicit any NADM clients, customers or employees. NADM responds that because of P1's tortious interference (i.e., inducing Phillips to breach her employment contract with NADM), NADM has been forced to expend significant resources, time and money to pursue this litigation to enforce its restrictive covenants. NADM also argues that its trade secrets have lost value, now that they have been shared with P1, its direct competitor.

The Court concludes that NADM sufficiently pleaded damages flowing directly from the alleged tortious interference at this stage of the case. The motion to dismiss the tortious interference claim will be denied, although it will be NADM's burden to properly prove its damages as the case moves forward.[3]

### iii. Civil Conspiracy

In Count 6, NADM asserts a civil conspiracy claim under Pennsylvania law against all defendants. The elements are: "(1) a combination of two or more persons acting with a common purpose to do an unlawful act or to do a lawful act by unlawful means or for an unlawful purpose; (2) an overt act done in pursuance of the common purpose; and (3) actual legal damage." *Brown v. Adams County*, No. 1:23-CV-01886, 2025 WL 285329, at *9 (M.D. Pa. Jan. 23, 2025) (quoting *Phillips v. Selig*, 959 A.2d 420, 437 (Pa. Super. 2008)). "Proof of malice, i. e., an intent to injure, is essential in proof of a conspiracy." *Thompson Coal Co. v. Pike Coal Co.*, 412 A.2d 466, 472 (Pa. 1979).

P1 argues that NADM failed to properly plead malice or damages. NADM responds that P1's malice is self-evident because it made efforts to induce Phillips to violate her agreements with

---

[3] P1 also argues that the decision to download NADM's secrets was made by Phillips alone. The facts and inferences at this stage of the case, however, must be construed in favor of NADM.

NADM and disclose its trade secrets, and that NADM suffered damages from having to pursue this litigation, as discussed above. (Docket No. 56 at 10-11).

As P1 recognizes, the SAC avers that it acted with the specific intent to harm NADM's business. (Docket No. 55 at 17-18). P1's citation to *Liberty Mut. Ins. Co. v. Gemma*, 301 F. Supp. 3d 523, 545 (W.D. Pa. 2018), in which the defendants acted "for the purpose of setting up an [competing] insurance business," is, therefore, not persuasive. P1 labels the allegation about a specific intent to harm NADM conclusory and argues that, at most, P1 hired away a valuable employee. P1 also points out that it fired Phillips one day after receiving the cease and desist letter. (Docket No. 55 at 19). These arguments may prevail with a jury if the case proceeds that far. At this stage, however, the facts and inferences must be drawn in the light most favorable to the plaintiff, NADM. NADM alleges that P1 intentionally proceeded to hire Phillips to build a competing recruiting platform, despite knowing about her restrictive covenants, and fired her only when it got caught red-handed. The allegations in the SAC suffice to make out a plausible civil conspiracy claim.

iv. Unfair Competition

The Pennsylvania Supreme Court has not clearly defined the elements of an unfair competition claim under Pennsylvania common law. In *Am. Inst. for Chartered Prop. Cas. Underwriters v. Posner*, No. 23-3251, 2025 WL 48332, at *2–3 (3d Cir. Jan. 8, 2025), the Third Circuit assumed, without deciding, that the Pennsylvania Supreme Court would adopt the Restatement (Third) of Unfair Competition. "Under the Restatement, to state an unfair competition claim, a plaintiff must plead that (1) the defendant engaged in an act defined in the Restatement as an unfair method of competition (e.g., misappropriation of trade secrets); and (2)

the defendant's conduct caused harm to the plaintiff's commercial relations." *Id.* (citing Restatement (Third) of Unfair Competition § 1 (Am. L. Inst. 1995)).

P1 contends that NADM failed to state a claim because it did not plead that the conduct caused a tangible impact to competition. (Docket No. 55 at 20). NADM, in response, cites *Reading Radio, Inc. v. Fink*, 833 A.2d 199, 212 (Pa. Super. 2003), for the proposition that when a party induces a competitor's employee to leave "for the purpose of having the employees commit wrongs, such as disclosing their former employer's trade secrets or enticing away his customers, the injured employer is entitled to protection."

In this case, NADM alleges that P1 hired Phillips to develop a competing recruitment platform, despite knowledge of her restrictive covenants. NADM reacted quickly; the Court issued a TRO; and P1 terminated Phillips' employment about ten days later. Those actions may make the damages in this case minimal. NADM, however, properly pleaded a cognizable claim for unfair competition.

IV. **CONCLUSION**

For the reasons set forth above, the Motion to Dismiss the SAC (Docket No. 54) will be granted in part, with respect to the claims against Prairie, and denied in all other respects. P1 will have ample opportunity to renew its challenges based on a fully-developed evidentiary record. An appropriate Order follows.

*s/ W. Scott Hardy*
W. Scott Hardy
United States District Judge

Dated: February 12, 2025

cc/ecf: All counsel of record